273 N.J. Super. 23 (1994)
640 A.2d 1185
BOROUGH OF DUNELLEN, A MUNICIPAL CORPORATION, PLAINTIFF,
v.
F. MONTECALVO CONTRACTING CO., INC., A NEW JERSEY CORPORATION, AND F.I.A. INSURANCE COMPANY, DEFENDANTS/THIRD-PARTY PLAINTIFFS,
v.
STETLER & GULDIN ENGINEERING, INC., THIRD-PARTY DEFENDANT/FOURTH PARTY PLAINTIFF/RESPONDENT,
v.
BOROUGH OF DUNELLEN, A MUNICIPAL CORPORATION, FOURTH-PARTY DEFENDANT/APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 15, 1994.
Decided May 4, 1994.
*25 Before Judges BRODY, STERN and KEEFE.
William H. Gazi argued the cause for appellant Borough of Dunellen (Foley & Gazi, attorneys; Mr. Gazi, on the brief).
Joseph Michelini argued the cause for respondent Stetler & Guldin Engineering, Inc. (O'Malley & Surman, attorneys; Jerome C. Landers, on the brief).
The opinion of the court was delivered by BRODY, P.J.A.D.
The Borough of Dunellen (Dunellen) appeals from an order declaring that it must provide for the defense and indemnification of Stetler & Guldin Engineering, Inc. (Stetler), the borough engineer, respecting the claims asserted against Stetler in this action by F. Montecalvo Contracting Co. (Montecalvo). Dunellen acknowledges that it would be obliged to pay Stetler's attorneys fees and expenses had they been incurred in defense of claims arising out of its services as the borough engineer. Dunellen contends, however, that Stetler was acting as an independent contractor, not as the borough engineer, with respect to the subject matter of Montecalvo's claims. We reject Dunellen's argument, as did Judge Hamlin, and affirm.
The underlying dispute in this action was settled when Montecalvo paid Dunellen $75,000 for damages Dunellen incurred as the result of Montecalvo's failure to complete its work under a 1988 contract to replace part of a sanitary sewer in Bound Brook Road (the project). Montecalvo defended the action by claiming that Dunellen's bid documents, prepared earlier that year by Stetler, failed to warn of subsurface water conditions that made the project unusually costly to complete. Montecalvo also asserted a third-party claim against Stetler alleging that it had negligently prepared the bid documents. In a fourth-party complaint, Stetler sought an order, which it obtained, declaring that Dunellen was obliged to provide it with a "defense and indemnification."
*26 Pursuant to the authority of N.J.S.A. 59:10-4, Dunellen adopted an ordinance that provides for
the defense of any action, suit or proceeding, whether civil, criminal, administrative or investigative, including a cross action, counterclaim or cross-complaint, against any public employee on account of any act or omission of that employee in the scope of their employment and shall defray all costs of defending such action, including reasonable counsel fees and expenses, together with costs of appeal, if any, excepting actions, suits or proceedings brought by the Borough against any employee. [Emphasis added.]
The ordinance defines "public employee" as follows:
The term "public employee" as used in this Chapter shall include any employee of the Borough of Dunellen... and shall include any elected or appointed official or any officer, employee or servant, whether or not compensated, who is authorized to perform any act or service; provided, however, that the term does not include an independent contractor or any person furnishing professional or extraordinary unspecifiable services under separate retainer, agreement or contract. The term "public employee" shall include persons formerly holding office or employment, provided the events giving rise to a cause of action or claim hereunder occur after the effective date of this Chapter. [Emphasis added.]
Dunellen contends that though Stetler was its borough engineer when it prepared the bidding documents, it had engaged Stetler to perform that and other services for the project separately as an independent contractor.
N.J.S.A. 40A:9-140 requires every municipality to create by ordinance the office of municipal engineer:
In every municipality the governing body, by ordinance, shall provide for the appointment of a municipal engineer and fix his compensation in an annual salary or fixed fee basis or at an hourly rate and based upon actual time and expenses agreed on prior to the rendering of the services. No municipal engineer shall be compensated by receiving a percentage of the contract for which he renders services. Unless otherwise provided by law his term of office shall be 3 years.
We have not been furnished with a copy of the ordinance creating the office, but there is no dispute that Dunellen had adopted such an ordinance before Stetler was appointed to the position by resolution.[1]
*27 Stetler's services on the project, as they affected Montecalvo, were performed in 1988. Dunellen appointed Stetler "as Borough Engineer" for that year by a resolution authorizing execution of an agreement that contained the terms of the appointment. The resolution provided that "payments for services rendered shall not exceed the sum of $5,000.00 included in the 1988 budget, unless services are to be performed for capital projects to be funded by Bond or Note authorizations." The agreement provided in part that Stetler "is hereby retained by the Contracting Unit to serve as the Municipal Engineer to the Borough of Dunellen for the purpose of rendering engineering services when the need arises and upon the request of the Mayor and Council."
Compensation was based upon a schedule of hourly rates attached to the agreement. Every month Stetler submitted to Dunellen's governing body a report and bill itemizing the services it rendered for the period. Those services included services for the project, for two other projects and for routine engineering services. Dunellen did not have a separate contract with Stetler for the services it performed for the project. It appears from the record that the governing body did not treat those services any differently from other services it authorized Stetler to perform for the Borough from time to time.
After the governing body ordered Montecalvo off the job in early 1989, it passed a resolution authorizing Stetler, who was still the borough engineer, to award a contract on an emergency basis, i.e. without public bidding, for completion of the project. In both the recitals and in the body of the resolution, Stetler is referred to as "the Borough Engineer" respecting the services it had and would perform for the project:
WHEREAS, The Mayor and Council of the Borough of Dunellen awarded Contract 88-1 to Montecalvo Contracting, Inc., for the replacement of a section of The Borough's sewer line on Bound Brook Road; and
WHEREAS, the said contract was terminated by the Mayor and Council as a result of the failure of Montecalvo Contracting Inc., to carry out the required work; and

*28 WHEREAS, Thomas S. Guldin, P.E.[[2]] the Borough Engineer and officer in charge of the department overseeing the required work, has certified that an emergency situation exists at the site affecting the public health, safety and welfare, pursuant to N.J.S.A. 40A:11-6; and
WHEREAS, it is necessary and proper for the Borough of Dunellen to immediately award a new contract to complete the required work without the necessity of public bidding, as authorized by N.J.S.A. 40A:11-6;
NOW, THEREFORE, BE IT RESOLVED by the Mayor and Council of the Borough of Dunellen that the Borough Engineer immediately prepare a revised contract based on new requirements and specifications, if any; solicit bids to complete the work pursuant to the revised contract; award a contract to the most qualified bidder and authorize the commencement of the required work.
Dunellen argues that Stetler was not acting as the borough engineer on the project for two reasons: (1) The governing body did not exercise control over how Stetler performed its services respecting the project and (2) Stetler was paid for its services on the project in excess of the sum budgeted for the engineering department.
As to the first reason, Dunellen concedes that other services Stetler performed during the year as the borough engineer were performed as an employee. There is no evidence that the governing body exercised any less control over the services Stetler performed for the project than over other engineering services Stetler performed. The governing body had ultimate control over all services Stetler performed, but, as is the case with all professional employees, the governing body did not control the details of how Stetler performed any of those services. In Marcus v. Eastern Agricultural Ass'n, Inc., 32 N.J. 460, 161 A.2d 247 (1960), the Court adopted Judge Conford's dissenting opinion respecting the criteria for finding an employer-employee relationship, 58 N.J. Super. 584, 597, 157 A.2d 3 (App.Div. 1959), where he said:
... there are various situations in which the control test does not emerge as the dispositive factor. For example, where it is not in the nature of the work for the manner of its performance to be within the hiring party's direct control, the factor of control can obviously not be the critical one in the resolution of the case, but *29 takes its place as only one of the various potential indicia of the relationship which must be balanced and weighed in determining what, under the totality of the circumstances, the character of that relationship really is.
Accord, New Jersey Property-Liability Ins. Guar. v. State, 195 N.J. Super. 4, 10, 477 A.2d 826 (App.Div.), certif. denied 99 N.J. 188, 491 A.2d 691 (1984).
Here, as with all other services it was authorized to perform, Stetler had no contract right to perform services in connection with the project. There was no contract or separate retainer agreement between Dunellen and Stetler respecting the project. The governing body could lawfully order Stetler to stop performing any services it had previously authorized. At least literally, Stetler cannot be regarded as "an independent contractor or any person furnishing professional or extraordinary unspecifiable services under separate retainer, agreement or contract," the exception in the ordinance definition of "a public employee."
As to payment for services rendered for the project, there is evidence that Stetler was paid $55,235.35 in excess of the sum budgeted to the engineering department. The Borough Treasurer described those services in an affidavit as services for a "capital improvement." It will be recalled that the resolution engaging Stetler as borough engineer in 1988 provided that "payments for services rendered shall not exceed the sum of $5,000.00 included in the 1988 budget, unless services are to be performed for capital projects to be funded by Bond or Note authorizations." Dunellen does not claim that the project was not so funded as a capital improvement.
The fact that the project was extraordinary, does not mean that Stetler's services for the project, billed at the hourly rate of the borough engineer, lay outside its role as a public employee. N.J.S.A. 40A:9-140, which, as previously noted, requires municipalities to appoint a municipal engineer, provides in part, "No municipal engineer shall be compensated by receiving a percentage of the contract for which he renders services." The Legislature obviously contemplated that a borough engineer would be *30 performing services such as those Stetler performed in connection with the Montecalvo contract.
Dunellen argues for the first time on appeal that Stetler was not properly appointed borough engineer because it is a corporation, not an individual. It relies on the use of the masculine gender pronoun in N.J.S.A. 40A:9-140 and N.J.S.A. 40A:9-2. The latter provides, "No person shall be appointed to or hold any office in a county or municipality in cases where scientific engineering skill is necessary, unless he has the required qualifications for personally performing the duties of such office." Dunellen also argues for the first time on appeal that its indemnification ordinance was enacted in March 1989, after Stetler performed the services that are the subject of Montecalvo's claim.
Except for matters of jurisdiction or of great public interest we need not consider questions or issues not properly presented to the trial court when, as here, an opportunity for such presentation was available. Nieder v. Royal Indemnity Ins. Co., 62 N.J. 229, 234, 300 A.2d 142 (1973). We note, however, that N.J.S.A. 1:1-2 provides that statutory references to the "masculine gender" ordinarily include "bodies corporate" and that statutory references to "person" ordinarily include "corporations." Dunellen does not contend that Stetler employees lacked the necessary engineering skills to perform the services of borough engineer. We also note that, with one exception, the ordinance does not exclude indemnification for damages and defense costs such as those incurred by Stetler after its adoption. The exception, which does not apply to Stetler, is found in the definition of "public employee," which includes "persons formerly holding office or employment, provided the events giving rise to a cause of action or claim hereunder occur after the effective date of this Chapter."
Stetler argues in its brief what it characterizes as "a new point." It wants us to assess Dunellen for the attorneys fees that it incurred in this appeal. In effect Stetler is claiming that it is entitled to attorneys fees for bringing this action against Dunellen, *31 a claim not made below. We will not exercise original jurisdiction to entertain a new claim for affirmative relief.
Affirmed.
NOTES
[1] Stetler alleged in its fourth-party complaint that at the time in question it "was the Borough Engineer of the Borough of Dunellen duly appointed to that position, pursuant to statute and municipal ordinance." We have not been given a copy of the answer to that pleading.
[2] Thomas S. Guldin was the principal of Stetler & Guldin Engineering, Inc., which Dunellen had appointed borough engineer.