291 N.J. Super. 501 (1996)
677 A.2d 1129
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
TREVOR BRADLEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 30, 1996.
Decided June 17, 1996.
*503 Before Judges KING, KLEINER and HUMPHREYS.
John C. Eastlack, Jr., argued the cause for appellant (Poplar & Eastlack, P.C., attorneys; Mr. Eastlack, on the brief).
Andrew M. Butchko, Deputy Attorney General, argued the cause for respondent (Deborah T. Poritz, Attorney General, attorney; Mr. Butchko, of counsel and on the brief).
The opinion of the court was delivered by KLEINER, J.A.D.
Defendant Trevor Bradley was indicted by the Atlantic County Grand Jury for: (1) attempted theft by deception, in violation of N.J.S.A. 2C:20-4 (count one); (2) unlawful use of a credit card, in violation of N.J.S.A. 2C:21-6d (count two); and (3) uttering a forged instrument, in violation of N.J.S.A. 2C:21-1a(3) (count three).
We granted defendant's petition for leave to appeal the denial of his motion to suppress evidence seized from a closed satchel-type briefcase approximately ten minutes after he was detained and placed under arrest at the Bally's Park Place Casino and Hotel in Atlantic City on September 24, 1993. The motion judge concluded that the search was so closely contemporaneous with defendant's *504 arrest that it was incidental to defendant's arrest. We disagree and reverse.

I
The sole witness for the State at defendant's suppression hearing was Detective William Ames. Ames testified that on September 24, 1993, he was dispatched to Bally's Park Place Casino and Hotel to investigate a possible credit card fraud. The police had been contacted by a representative of the casino security department. Ames indicated that he took between ten and fifteen minutes to travel to the casino.
On arrival at Bally's, Ames learned that defendant was being held at a Bally's satellite detaining office in the hotel and near the casino. Ames learned that defendant had approached a cash advance booth and presented a driver's license and a MasterCard credit card bearing the name Michael Brown in an attempt to charge a cash advance of $1,000 against the MasterCard account.
A written report of the investigation was subsequently prepared. Ames read from that report at the suppression hearing. He wrote, "The cashier, Ms. Brown, advised me that upon checking the printed check against the credit card she realized that the numbers did not match, she also realized that the Virginia drivers license used as ID was fraudulent/fake. She contacted security and the accused was taken into custody in the north tower area after he tried to flee the area."
Ames found defendant in the satellite detaining office, which he described as "very small," with a desk and one or two chairs. Present with defendant were Bally's security supervisor and one or two Bally's security personnel.
Defendant was placed under arrest and handcuffed. Ames testified that he believed he handcuffed defendant across his back. After defendant was handcuffed, Ames conducted a pat-down search. Defendant did not possess any weapon. A Georgia driver's license, bearing defendant's name, was found on defendant's *505 person. In the detaining office at the time was a brown leather case belonging to defendant. The case was not in defendant's possession during his detention. Ames described the case as a saddle bag with a flap that came over the top and one or two buckles to secure the flap.
After searching defendant, Ames escorted him to the Division of Gaming Enforcement Office in Bally's Casino located two floors above the satellite detaining office. That walk took three to four minutes. Defendant's case was carried by another person. Ames indicated that all investigations conducted at casino hotels are conducted in the Gaming Enforcement office. At the Bally's facility, that office includes a small monitor room, a bathroom, and a larger room with desks. Present were Ames, defendant, two or three Bally's security personnel, and Detective Weidel, who had been dispatched separately by the police to the casino to assist Ames in the investigation.
Det. Ames advised defendant of his Miranda[1] rights and defendant signed a Miranda card indicating that he understood his rights. After warning defendant of his rights, Det. Ames commenced his investigation of the alleged crime, beginning with a search of defendant's leather case. Det. Ames asked questions of defendant while going through his case. The search revealed numerous false identifications with defendant's photographs, credit cards issued to names other than defendant's and other personal items. Det. Ames testified that five to ten minutes elapsed from the time he placed defendant under arrest to the time he searched defendant's briefcase. No attempt was made by Ames to obtain a formal search warrant or a telephonic search warrant prior to the search of defendant's leather case.
On cross-examination, Ames indicated that while in the satellite detaining office, defendant never reached for or tried to grab his leather case. Defendant also made no such attempt while walking to the Gaming Enforcement office or after they reached that *506 office. Defendant did not attempt to flee and engaged in no assaultive behavior with the security personnel or with the detectives.
The motion judge determined that the search of defendant's briefcase was a lawful search incident to defendant's lawful arrest. The judge explained,
Now, because there was some little bit of time that elapsed between the arrest, the detention and the then searching of the briefcase, that is of no moment.... This Defendant was secured, but the search came so closely contemporaneous with the arrest that certainly this search is a proper search of this Defendant's person, his briefcase and that is even though he did not have ready access to the briefcase.
In reaching this conclusion, the motion judge relied exclusively on State v. Grass, 250 N.J. Super. 74, 593 A.2d 379 (App.Div. 1991). In Grass, the defendant's motor vehicle was pulled over for speeding. Id. at 75, 593 A.2d 379. The police discovered that the defendant's license had been suspended and arrested him. Id. at 76, 593 A.2d 379. The defendant was handcuffed and placed in the back seat of the officer's squad car. Ibid. Two or three minutes later, the officer searched the defendant's vehicle and found a gun and cocaine. Ibid. We concluded that the search in question was conducted "immediately" after the arrest. Id. at 78, 593 A.2d 379. We consequently upheld the search as a valid incident to the defendant's arrest under New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), which addressed the authority to search an automobile incident to arrest.
In State v. Barksdale, 224 N.J. Super. 404, 540 A.2d 901 (App. Div. 1988), we had occasion to review Belton, and observed:

Belton requires the search of the passenger compartment of a motor vehicle as an incident to a lawful arrest of the occupants to be contemporaneous with the arrest; the scope of the search is limited to "the area into which an arrestee might reach in order to grab a weapon or evidentiary item." ... Belton does not alter the underlying rationale for this type of search; it establishes a bright line rule which extends the area to be searched to encompass the entire passenger compartment of a motor vehicle including closed containers within the passenger compartment.
[Id. at 413-14, 540 A.2d 901 (quoting Chimel v. California, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685, 694 (1969)).]
Using the concepts articulated in Belton, we were able to conclude in Grass that the fact that the defendant was handcuffed and *507 situated in the rear of the squad car at the time of the search was of no import.
Subsequent to our decision in Grass, the Supreme Court in State v. Pierce, 136 N.J. 184, 642 A.2d 947 (1994), had occasion to reevaluate the implications of Belton. Pierce specifically focused upon "the scope of a police officer's authority to conduct a search of articles contained in the passenger compartment of an automobile following the arrest of the driver for operating the vehicle while his license is suspended." Id. at 186, 642 A.2d 947. Pierce involved the same stop and search as in Grass, supra. Pierce was a passenger in the car owned and driven by Grass. Although the Supreme Court concluded that the custodial arrest of co-defendant Grass for operating a motor vehicle during the period in which his driver's license had been suspended was proper, it concluded that a search of Grass's vehicle was improper under the circumstances of that case.[2]Id. at 205, 215, 642 A.2d 947. The Supreme Court left open the question whether Belton was compatible with the New Jersey Constitution. Pierce, supra, 136 N.J. at 208, 642 A.2d 947.
We find that the motion judge's reliance on Grass was inappropriate, as that case justified the search on the special distinctions *508 which have evolved in those cases related to automobile stops. In addition, Grass may have been tacitly overruled by Pierce. In any event, the body of law interpreting the Fourth Amendment allows greater flexibility to the arresting police officer to conduct a search following a stop of a motor vehicle than to search the defendant's personalty subsequent to the arrest of a defendant in a non-motor vehicle setting. The motion judge therefore should not have evaluated the issues raised by defendant's motion to suppress in the context of principles governing motor vehicle searches. Though there is some overlap of legal principles in these two search categories, there are also substantial differences.
A salient principle stressed by the United States Supreme Court is:
Once law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest.
[United States v. Chadwick, 433 U.S. 1, 15, 97 S.Ct. 2476, 2485, 53 L.Ed.2d 538, 551 (1977).]
Belton may modify this principle, at least insofar as the United States Supreme Court is concerned, by broadening the search authority of police officers with respect to searches incident to arrests that involve automobiles. We nonetheless find the statement in Chadwick to be controlling in non-automobile cases.

II
The Fourth Amendment to the United States Constitution reads in part:
The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated....
[U.S. Const. amend. IV.]
Article 1, paragraph 7 of the 1947 New Jersey Constitution includes identical language. N.J.Const. art. I, ¶ 7. Both constitutional provisions require "the approval of an impartial judicial officer based on probable cause before most searches may be undertaken." State v. Patino, 83 N.J. 1, 7, 414 A.2d 1327 (1980).
*509 A search without judicial approval in the form of a warrant is presumed invalid. State v. Valencia, 93 N.J. 126, 133, 459 A.2d 1149 (1983); State v. Judge, 275 N.J. Super. 194, 199, 645 A.2d 1224 (App.Div. 1994). The warrant requirement may be dispensed with in only a few narrowly circumscribed exceptions; the State has the burden of validating a warrantless search by bringing it within one of these exceptions. Patino, supra, 83 N.J. at 7, 414 A.2d 1327. The State must prove the validity of such a search by a preponderance of the evidence. Id. at 13, 414 A.2d 1327; Judge, supra, 275 N.J. Super. at 199, 645 A.2d 1224.
One traditional and universally recognized exception to the prohibition against warrantless searches is the search incident to lawful arrest. United States v. Robinson, 414 U.S. 218, 224, 94 S.Ct. 467, 471, 38 L.Ed.2d 427, 434 (1973). When a suspect is lawfully placed under arrest, a law enforcement officer may conduct a search of the person of the suspect as well as the area within the suspect's immediate control. Ibid.; Chadwick, supra, 433 U.S. at 14-15, 97 S.Ct. at 2485, 53 L.Ed.2d at 550; Chimel v. California, 395 U.S. 752, 755-56, 89 S.Ct. 2034, 2036, 23 L.Ed.2d 685, 689 (1969); Patino, supra, 83 N.J. at 8, 414 A.2d 1327 (citing Chimel, supra, 395 U.S. at 763, 89 S.Ct. at 2040, 23 L.Ed.2d at 694); State v. Miller, 126 N.J. Super. 572, 574, 316 A.2d 16 (App.Div. 1974) (citing Chimel, supra, 395 U.S. at 763, 89 S.Ct. at 2040, 23 L.Ed.2d at 694). Such a search is permitted to protect the safety of the officer and to preserve evidence that may be destroyed or removed. Chadwick, supra, 433 U.S. at 14-15, 97 S.Ct. at 2485, 53 L.Ed.2d at 550; Chimel, supra, 395 U.S. at 762-63, 89 S.Ct. at 2040, 23 L.Ed.2d at 694; Patino, supra, 83 N.J. at 8, 414 A.2d 1327; State v. Gray, 59 N.J. 563, 569, 285 A.2d 1 (1971); State v. Boykins, 50 N.J. 73, 76, 232 A.2d 141 (1967). A search of the area under the control of the arrestee is permitted "to find and seize things connected with the crime as its fruits or as the means by which it was committed," Eleuteri v. Richman, 47 N.J. Super. 1, 21, 135 A.2d 191 (App.Div. 1957), aff'd, 26 N.J. 506, 141 A.2d 46 (1958), cert. denied sub nom. Eleuteri v. Furman, 358 *510 U.S. 843, 79 S.Ct. 52, 3 L.Ed.2d 77 (1958), and to secure "the area into which an arrestee might reach in order to grab a weapon or evidentiary items," Chimel, supra, 395 U.S. at 762-63, 89 S.Ct. at 2040, 23 L.Ed.2d at 694. See also Carroll v. United States, 267 U.S. 132, 158, 45 S.Ct. 280, 287, 69 L.Ed. 543, 553 (1925) ("When a man is legally arrested for an offense, whatever is found upon his person or in his control which it is unlawful for him to have and which may be used to prove the offense may be seized and held as evidence in the prosecution."). The safety of a police officer will nevertheless not justify a search "through closed or concealed places beyond the control or reach of the defendant even though in the area of the arrest itself." Patino, supra, 83 N.J. at 8, 414 A.2d 1327.
A search incident to an arrest must be contemporaneous with that arrest. Chadwick, supra, 433 U.S. at 15, 97 S.Ct. at 2485, 53 L.Ed.2d at 550; State v. Doyle, 42 N.J. 334, 343, 200 A.2d 606 (1964); State v. Barksdale, 224 N.J. Super. 404, 415, 540 A.2d 901 (App.Div. 1988); State v. Parker, 153 N.J. Super. 481, 489, 380 A.2d 291 (App.Div. 1977) (holding that once the threat to an officer's safety and the evidence's preservation has passed, police cannot search personal effects of an arrestee). In Doyle, the New Jersey Supreme Court illustrated what it means by "contemporaneous:" "It is sufficient if the valid arrest and search are reasonably contemporaneous, that is, they occur as parts of a single transaction, as connected units of an integrated incident." 42 N.J. at 343, 200 A.2d 606. In State v. Ercolano, 79 N.J. 25, 397 A.2d 1062 (1979), the Court explained that a search is not incidental to an arrest if it takes place at a different time and place than the arrest. Id. at 36 n. 2, 397 A.2d 1062.
The authority of police officers to search a suspect incident to arrest includes the power to search a container found in the suspect's possession at the time of arrest. United States v. Ross, 456 U.S. 798, 822-23, 102 S.Ct. 2157, 2171-72, 72 L.Ed.2d 572, 592 (1982). See also Texas v. Brown, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983); Arkansas v. Sanders, 442 U.S. 753, 763 n. 11, *511 99 S.Ct. 2586, 2593 n. 11, 61 L.Ed.2d 235, 245 n. 11 (1979) (stating in dicta that a container must be in the arrestee's "immediate control" to be lawfully searched incident to arrest). "A container carried at the time of arrest often may be searched without a warrant and even without any specific suspicion concerning its contents." Ross, supra, 456 U.S. at 822-23, 102 S.Ct. at 2171-72, 72 L.Ed.2d at 592. See also Chadwick, supra, 433 U.S. at 11, 97 S.Ct. at 2483, 53 L.Ed.2d at 548; United States v. Robinson, 414 U.S. 218, 236, 94 S.Ct. 467, 477, 38 L.Ed.2d 427, 441 (1973) (upholding a search incident to arrest in spite of absence of fear on the officer's part that the defendant was armed); Chimel, supra, 395 U.S. at 755-56, 89 S.Ct. at 2036, 23 L.Ed.2d at 689; State in the Interest of A.R., 216 N.J. Super. 280, 285-86, 523 A.2d 678 (App.Div. 1987).
The United States Supreme Court in Chadwick provided a comprehensive review of searches incident to arrest. The issue as stated by the Court was whether a search warrant is required before a law enforcement official may open a locked footlocker which he has lawfully seized at the time of the arrest of its owners, when there is probable cause to believe that the locker contains contraband. 433 U.S. at 3, 97 S.Ct. at 2479, 53 L.Ed.2d at 543. In Chadwick, Amtrak officials in San Diego observed a suspicious trunk being loaded onto a train bound for Boston. Ibid. Federal agents in San Diego alerted agents in Boston, who went to the Boston train station to await the arrival of the trunk. Ibid. When the trunk arrived in Boston, the defendant claimed it and placed it in the trunk of his car. Id. at 4, 97 S.Ct. at 2479, 53 L.Ed.2d at 543. The federal agents arrested the defendant and his car was towed to the federal building in Boston. Id. at 4, 97 S.Ct. at 2479-80, 53 L.Ed.2d at 543-44.
An hour and a half after the arrest, the agents opened the trunk and found marijuana. Id. at 5, 97 S.Ct. at 2480, 53 L.Ed.2d at 544. The government conceded that the footlocker had been under the agents' exclusive control from the time of the arrest until it was opened. Id. at 4, 97 S.Ct. at 2480, 53 L.Ed.2d at 544. Furthermore, there was no risk that the contents would have been *512 removed and there was no risk to the safety of the agents. Ibid. The government tried to justify the search as incident to the defendant's arrest. Id. at 14, 97 S.Ct. at 2485, 53 L.Ed.2d at 550. It maintained that the search of a container incident to arrest is permissible as long as the seizure of the container is contemporaneous with the arrest and the search is conducted "as soon thereafter as [is] practicable." Ibid.
The Court held that the defendant had an expectation of privacy in his locked trunk. Id. at 11, 97 S.Ct. at 2483, 53 L.Ed.2d at 548. It also found no exigency which would justify a warrantless search. Ibid. The Court thus concluded that the warrantless search had been unreasonable. Ibid.
The Court reiterated the principles announced in Chimel that a search incident to arrest is permitted to protect the safety of law enforcement officers and to preserve evidence that is in danger of being removed or destroyed. Id. at 14, 97 S.Ct. at 2485, 53 L.Ed.2d at 550. Officers are authorized to search the person of the arrestee and the area within his immediate control. Ibid. "Such searches may be conducted without a warrant, and they may also be made whether or not there is probable cause to believe that the person arrested may have a weapon or is about to destroy evidence." Ibid.
A search of a container incident to arrest is not without its limitations, however. "[W]arrantless searches of luggage or other property seized at the time of arrest cannot be justified as incident to that arrest either if the `search is remote in time or place from the arrest' or no exigency exists." Id. at 15, 97 S.Ct. at 2485, 53 L.Ed.2d at 550-51 (quoting Preston v. United States, 376 U.S. 364, 367, 84 S.Ct. 881, 883, 11 L.Ed.2d 777 (1964)).
Once law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest.
[Id. at 15, 97 S.Ct. at 2485, 53 L.Ed.2d at 551.]
*513 Because the search occurred an hour and a half after the arrest and both the defendant and the footlocker were clearly in the control of the federal agents, the Court held that the search of the footlocker was not incident to the defendant's arrest. Ibid. See also State v. Ercolano, 79 N.J. 25, 36 n. 3, 397 A.2d 1062 (1979) (holding that a warrantless search of a car towed from an arrestee's apartment building conducted one and a half hours later is not incidental to the arrest because it took place at a different time and location than the arrest). That a search warrant would have been issued matter had one been requested, was of no consequence to the Court's decision. Chadwick, supra, 433 U.S. at 15, 97 S.Ct. at 2485, 53 L.Ed.2d at 551.
The Court's decision in Chadwick is consistent with its previous opinion in Arkansas v. Sanders, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979). In Sanders, police officers removed a suitcase from a lawfully-stopped vehicle. Id. at 755, 99 S.Ct. at 2588, 61 L.Ed.2d at 239. The Court was concerned with the privacy rights that a person possesses in luggage that is kept in a motor vehicle. The Court did not expressly address searches incident to arrest. The Court concluded that persons have a privacy interest in luggage and this privacy interest is in no way affected by the fact that the luggage may be in an automobile. Id. at 764 n. 13, 99 S.Ct. at 2593 n. 13, 61 L.Ed.2d at 245 n. 13.
Although the Court did not analyze the search as one incident to arrest, it stated in dicta that the search of a container incident to arrest will be reasonable only if the container is in the "immediate control" of the arrestee. Id. at 763 n. 11, 99 S.Ct. at 2593 n. 11, 61 L.Ed.2d at 245 n. 11. The Court wrote, "Where ... police, without endangering themselves or risking loss of the evidence, lawfully have detained one suspected of criminal activity and secured his suitcase, they should delay the search thereof until after judicial approval has been obtained." Id. at 766, 99 S.Ct. at 2594, 61 L.Ed.2d at 246. Although this case was not decided as a search of a container incident to arrest, the Court's language is *514 instructive as to a person's rights in containers and luggage that are in his or her possession.
New Jersey courts have abided by the standards announced in Chimel and Chadwick concerning searches of containers incident to arrest. In State v. Patino, 83 N.J. 1, 414 A.2d 1327 (1980), the New Jersey Supreme Court confronted an issue similar to that in Chadwick. During a routine traffic stop, a New Jersey State Trooper observed what he believed to be marijuana in plain view on the floor next to the front seat of the defendant's vehicle. Id. at 5, 414 A.2d 1327 (quoting State v. Patino, 163 N.J. Super. 116, 119-20, 394 A.2d 365 (App.Div. 1978)). The trooper arrested the driver and passenger and searched the passenger compartment of the vehicle. Id. at 5-6, 414 A.2d 1327. The search of the passenger compartment revealed nothing. Id. at 6, 414 A.2d 1327.
The trooper next searched the trunk of the vehicle. Ibid. The trunk contained a shopping bag which was found to contain cocaine. Ibid. The State attempted to justify the search as being incident to the defendants' arrest for possession of marijuana. Id. at 7, 414 A.2d 1327.
After examining the history and scope of the search incident to arrest, the Court commented,
[W]e do not see any circumstances in this case which would lead a police officer reasonably to believe that two arrestees patted down and therefore presumably free of weapons on their persons, and detained at the front of the automobile, might be able to gain access to an enclosed automobile trunk in such a way as to endanger or overpower an armed, albeit unaided, state trooper, or to enable them to destroy evidence contained therein.
[Id. at 9, 414 A.2d 1327.]
The Court concluded that the search was not necessary either to protect the safety of the trooper or to preserve evidence. Ibid. The Court consequently found that the search was not incident to arrest. Ibid.
Although Patino did not involve the search of a container incident to arrest, the Court's opinion is instructive as to the treatment in general of searches incident to arrest. Patino suggests, for instance, that only the area within the immediate *515 control of an arrestee may be searched. This rule applies even if the search is found to be contemporaneous with the arrest.
These issues are fact sensitive and the facts must be carefully examined. See, e.g., State in the Interest of A.R., 216 N.J. Super. 280, 523 A.2d 678 (App.Div. 1987) (holding that the contemporaneous search of a leather pouch was an incident to arrest); State v. DeLorenzo, 166 N.J. Super. 483, 400 A.2d 99 (App.Div. 1979) (holding that although the seizure of a duffle bag was justified by exigent circumstances, a search of the duffle bag was not justified) (citing Chadwick, supra, 433 U.S. at 15, 97 S.Ct. at 2485, 53 L.Ed.2d at 551); State v. Barksdale, 224 N.J. Super. 404, 540 A.2d 901 (App.Div. 1988) (finding that a search of an automobile ten minutes after an arrest was not an incident of the arrest); State v. Grass, 250 N.J. Super. 74, 593 A.2d 379 (App.Div. 1991) (finding that a search conducted two or three minutes after an arrest was incidental to the arrest); State v. Evans, 181 N.J. Super. 455, 438 A.2d 340 (App.Div. 1981) (holding that since defendant emerged from an automobile carrying a "suitcase or briefcase type bag," a search of that bag was a lawful incident of the arrest).

III
Applying these principles to the facts of this case, we find most notably that the search of defendant's satchel commenced at least ten minutes after he was arrested by Ames and at least twenty-five minutes after he was detained by two or three security personnel employed by Bally's. Chadwick declared that a search will not be permitted if it is remote in time and place from the arrest. The search under review was conducted in the Casino Enforcement office, two floors above the satellite detaining office and four minutes distant. The search clearly was not part "of a single transaction, as connected units of an integrated incident," as proposed in Doyle.
Defendant was handcuffed at the time of the search and his bag was in the exclusive possession of the police officers. Defendant clearly could not reasonably have been expected to gain possession *516 of the bag, either to remove a weapon or to remove or destroy evidence therein. Chadwick held that a search of a container is no longer an incident to an arrest once law enforcement officials have taken exclusive control of the container. Furthermore, an arrestee cannot be presumed to be superhuman. Barksdale, supra, 224 N.J. Super. at 415-16, 540 A.2d 901.
Although Grass, if it is still viable, may authorize a search following handcuffing within two to three minutes of the arrest, Grass was a search incidental to an automobile stop. The motion judge should have analyzed the facts presented utilizing standards relevant to non-motor vehicle searches.

IV
On appeal, the State contends for the first time that the fruits of the search should be admitted under the inevitable discovery doctrine. See State v. Johnson, 120 N.J. 263, 576 A.2d 834 (1990); State v. Sugar, 100 N.J. 214, 495 A.2d 90 (1985). The State argues that defendant's satchel ultimately would have been searched pursuant to administrative inventory procedures. See Illinois v. Lafayette, 462 U.S. 640, 643, 103 S.Ct. 2605, 2608, 77 L.Ed.2d 65, 69 (1983).
Defendant urges that an issue raised for the first time on appeal should not be entertained by the Appellate Division. See Docteroff v. Barra Corp., 282 N.J. Super. 230, 237, 659 A.2d 948 (App.Div. 1995); Borough of Dunellen v. F. Montecalvo Contracting Co., Inc., 273 N.J. Super. 23, 30, 640 A.2d 1185 (App.Div. 1994); Murin v. Frapaul Construction Co., 240 N.J. Super. 600, 613, 573 A.2d 989 (App.Div. 1990); State v. Mahoney, 226 N.J. Super. 617, 626, 545 A.2d 235 (App.Div. 1988). A review of the transcript of the suppression hearing reveals that the State did not present this argument to the trial court. We therefore will disregard this argument. See R. 2:10-2. We certainly do not consider as plain error the failure to address sua sponte the inevitable discovery concept, especially in the absence of any evidence that would have justified an inventory at the scene of the arrest of the contents of *517 a closed satchel. See R. 1:7-5; State v. Mangold, 82 N.J. 575, 414 A.2d 1312 (1980); State v. Mahoney, 226 N.J. Super. 617, 545 A.2d 235 (App.Div. 1988); State v. Pace, 171 N.J. Super. 240, 408 A.2d 808 (App.Div. 1979).
The motion to suppress should have been granted. We reverse and remand for trial.[3]
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] The Supreme Court instructed that the decision in Pierce "does not affect the right of a police officer, following a valid custodial arrest for a motor-vehicle violation or for a criminal offense, to conduct a search of the person of the arrestee solely on the basis of the lawful arrest." Id. at 213-14, 642 A.2d 947 (citations omitted).

The Supreme Court also instructed that "police officers are authorized under the `automobile exception' to make warrantless searches of vehicles that they have stopped on the highway whenever they have probable cause to believe that a vehicle contains contraband or evidence of a crime." Id. at 214, 642 A.2d 947. (citing State v. Alston, 88 N.J. 211, 230-31, 440 A.2d 1311 (1981)).
We note that Justice Handler, in a concurring opinion, concluded, "The search here was invalid, under both Belton and Chimel, for the straightforward and narrow reason that it was not a contemporaneous incident of the arrest and the passenger compartment was no longer within the "immediate control" of Grass once he had been physically restrained and removed and placed in the patrol car." Id. at 223, 642 A.2d 947.
[3] When defendant filed his motion to suppress evidence, he also filed a separate motion seeking the recusal of the motion judge. Both motions were denied. Defendant sought leave to appeal the ruling in each motion. We only granted leave to appeal the denial of defendant's motion to suppress.

We express no view of the merits of defendant's motion seeking recusal of the motion judge. However, we direct the Criminal Assignment Judge of the Vicinage to consider assigning this matter for trial to another judge assigned to the Criminal Part. See R. 1:12-1(d).