688 A.2d 1138

STATE OF NEW JERSEY, PLAINTIFF, v.
CRAIG D. DOMINICK, DEFENDANT.

Superior Court of New Jersey
Law Division Bergen County
Criminal Part

Decided October 4, 1996.

*Philip Scalo,* for Plaintiff.

*Salvador H. Sclafani,* for Defendant.

## OPINION

JOHN A. CONTE, J.S.C.

This is an interlocutory appeal from a decision of the Municipal Court of Saddle River granting the motion of the defendant to suppress evidence obtained following a motor vehicle stop. There was no hearing and no one testified. The parties stipulated that the facts contained in their opposing briefs were consistent and could serve as the basis for a ruling of the court.

There are two fact sensitive issues raised. Is the surrender of incriminating evidence to a police officer during a valid motor vehicle stop governed by the rules of search and seizure? If so, was the calling for backup tantamount to such coercion negating the voluntariness of consent? There are no reported decisions in this state which articulate a rule controlling the degree of coercion involved in the surrender of contraband while applying the principles of search and seizure.

In support of the motion, the defendant argues that (a) the turnover of the alleged marijuana and drug paraphernalia was involuntary, (b) that the actions of the police officer in calling for backup amounted to coercion, (c) the action of the police officer in calling for backup was disproportionate to the circumstances and

inconsistent with and unnecessary to enforce the issuance of a motor vehicle summons, and (d) that the investigation, interrogation and/or seizure of the evidence without a proper warrant was illegal.

The State argues that a warrant is unnecessary where the consent of the defendant is knowing and voluntary. The turnover and surrender of the evidence were not the result of coercion or intimidation by the police officer.

The facts revealed that on February 2, 1996, at approximately 10:40 a.m., Saddle River police officer Thomas Psota stopped the vehicle of the defendant on Route 17 North for failure to have a front license plate. Officer Psota informed the defendant of the reason for the stop and asked that he produce his driver's license, auto registration and insurance card. The Defendant was able only to produce his driver's license. The officer returned to his car and was informed by his dispatcher that the registration for the car, owned by another person, had expired the previous month. The Defendant was then informed that the vehicle could not be driven because of the expired registration. A towing company was contacted to remove the vehicle from the highway.

Before placing the defendant in the rear of the patrol car for transportation back to police headquarters, the officer conducted a patdown of the defendant for safety reasons. At that time, the officer asked the defendant to open the knapsack which he was carrying. The Defendant informed officer Psota that he did not want him to look inside of the knapsack. After a second request by the officer to open the bag, the defendant walked to the rear of his own vehicle and placed the knapsack inside his trunk. In response to this action of the defendant, officer Psota proceeded to call for backup. Thereafter, the defendant opened his trunk, retrieved his knapsack and produced what is alleged to be marijuana and two pipes used for inhaling.

At approximately 11:00 a.m., officer Psota placed the defendant under arrest and informed him of his *Miranda* rights. The Defendant was transported to Saddle River Police Headquarters,

where he was charged with possession of marijuana in a quantity of less than fifty grams, in violation of *N.J.S.A.* 2C:35–10a(4) and possession of drug paraphernalia, in violation of *N.J.S.A.* 2C:36–2.

A decision on the issues raised can not be reached without a discussion of the constitutional protections against unreasonable search and seizures. The fundamental protection is found in the Fourth Amendment of the *U.S. Constitution* :

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the person or things to be seized.

The *New Jersey Constitution,* Article I, Paragraph 7, adopted in 1947 is nearly verbatim, changing only the words "but upon" to "except" and "or" to "and".

Under both of these Constitutions a warrantless search and seizure is *prima facie* invalid and can be justified only if it falls within a specific exception. *State v. Demeter,* 124 *N.J.* 374, 379–380, 590 *A.*2d 1179 (1991). The Fourth Amendment does not proscribe all searches and seizures, but only those that are judicially deemed unreasonable. *State v. Bruzzese,* 94 *N.J.* 210, 216–217, 463 *A.*2d 320 (1983), *cert. denied* 465 *U.S.* 1030, 104 *S.Ct.* 1295, 79 *L.Ed.*2d 695 (1984). The touchstone of the Fourth Amendment is reasonableness. *Id.* at 217, 463 *A.*2d 320. In *Terry v. Ohio,* 392 *U.S.* 1, 88 *S.Ct.* 1868, 20 *L.Ed.*2d 889 (1968) the Court held that police have the authority to briefly detain a person for investigative purposes even if they lack probable cause to arrest. A test for the validity of an investigatory stop was articulated in *State v. Davis,* 104 *N.J.* 490, 517 *A.*2d 859 (1986). Writing for the Court, Justice Garibaldi said:

> In sum, to determine the lawfulness of a given seizure under New Jersey law, it is incumbent upon a reviewing court to evaluate the totality of circumstances surrounding the police-citizen encounter, balancing the State's interest in effective law enforcement against the individual's right to be protected from unwarranted and/or overbearing police intrusions.

[*Id.* at 504, 517 *A.*2d 859.]

The officer must have a "particularized suspicion based upon an objective observation that the person stopped has been or is about to engage in criminal wrongdoing." *Id.* The facts in *Davis* reveal that when a police officer radioed an inquiry about bicycles being ridden by defendants, they admitted the bicycles were stolen. The trial court's order suppressing evidence that the bicycles were stolen based on an unreasonable search was reversed.

At the suppression hearing, the municipal court relied on *State v. Hladun,* 234 *N.J.Super.* 518, 560 *A.*2d 1348 (Law Div.1989). In that case the court found the circumstances established coercion and negated the otherwise voluntary surrender of evidence. The facts revealed that the police entered the house with guns drawn, handcuffed and dragged the defendant from the house, and threatened to get a search warrant if the defendant did not comply with their requests. The court also relied on the case of *State v. Holmgren,* 282 *N.J.Super.* 212, 659 *A.*2d 939 (App.Div.1995). Although *Holmgren* addressed the search of a duffel bag without the consent of the driver of a motor vehicle, the facts are distinguishable from the present situation. In *Holmgren* there was the possibility that the motor vehicle was stolen and the officer went through the belongings of the defendant without his permission.

██ None of those circumstances exists in this case. On the contrary, the defendant was stopped for a routine traffic violation and was not placed under arrest until the alleged marijuana and paraphernalia were handed over to the officer. Although the officer asked the defendant what was in the knapsack, there was no additional request after it was placed in the trunk of the car. When the defendant later retrieved the knapsack, he did so voluntarily. Also, the defendant was stopped for failure to have a front license plate, and was delayed only by the absence of a current registration. The Defendant produced the evidence on his own without any further request of the officer.

Although the defendant argues that it was unusual and unnecessary for the officer to call for backup, such action alone, unaccompanied by real or objectively perceived force or threat of force,

does not negate the free will of the defendant nor does it prevent him from understanding the consequences of his voluntary surrender of the contraband. Important to this consideration is the undisputed fact that it was the defendant who first drew the attention of the officer to the potential that contraband existed when he placed the knapsack in the trunk. And it was the defendant who declared to the officer that he did not want him knowing what was in the knapsack.

There are times when police conduct at the scene can negate consent given by a party and consequently result in coercion. In *State v. Speid,* 255 *N.J.Super.* 398, 605 *A.2d* 297 (Law Div.1992), police officers entered a house without a warrant and secured the premises after observing drug sales occur outside the house. The police then proceeded to search the house without obtaining a warrant. After finding drugs, the police badgered the defendant into signing a consent form for the search, stating that if she did not and more drugs were found, additional family members would later be arrested. On granting the motion to suppress, the court believed, "that the police had no intention of securing a warrant, rather, they pressured [defendant] to consent." *Id.* at 406, 605 *A.2d* 297. The court also stated that this scenario "had the propensity to create an inherently coercive atmosphere." *Id.*

Although the facts of *Speid* can be distinguished from those of the case at bar, *Speid* is a useful example of when police conduct vitiates the consent of a defendant. The officer in the present case asked the defendant what was in the knapsack. In response, not only did the defendant discourage him from looking inside, but he removed it to the locked trunk of his car. There was a reasonable suspicion created and the officer was justified in calling for backup. This action of the officer does not rise to the level of such coercion to negate the later reaction of the defendant.

A further distinction must be made between searches and seizures made at ordinary motor vehicle stops and those made at the time of an arrest. It is clear that police officers have much stricter standards when the incident in question does not involve

an arrest. In the case of *State v. Bradley*, 291 *N.J.Super.* 501, 677 *A.*2d 1129 (App.Div.1996), the police searched the satchel of the defendant ten minutes after he was detained and put under arrest. The satchel also was never on his person during that ten minute period. In reversing the decision of the lower court, the Appellate Division held that the search was invalid and was too remote in time and place. The *Bradley* court, citing *U.S. v. Chadwick*, 433 *U.S.* 1, 14, 97 *S.Ct.* 2476, 2485, 53 *L.Ed.*2d 538, 550 (1977), stated: "Officers are authorized to search the person of the arrestee and the area within his immediate control. [Such] searches may be conducted without a warrant, and they may also be made whether or not there is probable cause to believe that the person arrested may have a weapon or is about to destroy evidence." *State v. Bradley, supra,* at 512, 677 *A.*2d 1129.

The Defendant in this case was stopped for a failure to have a front license plate. This was not an arrest situation and the police officer would not have been justified in searching the defendant and his belongings if a reasonable suspicion had not been created.

In the case of *State v. Otero*, 245 *N.J.Super.* 83, 584 *A.*2d 260 (App.Div.1990), the Appellate Division determined that an articulable and reasonable suspicion existed which allowed a police officer to approach and investigate the defendant during a motor vehicle stop. The court also found that the defendant's refusal to show his hands amounted to evasive conduct which would allow an officer to believe that he was armed. Similar evasive conduct existed in the present case. The officer asked defendant what was in the knapsack twice. The Defendant not only tried to persuade him not to look in the knapsack, but he also placed it in the trunk of his car after the second request. The police officer could easily have believed that the defendant was armed and the appropriate reaction was to call for back-up.

The officer had the right to patdown the defendant before placing him in the patrol car. He had the right to inquire as to what was in the knapsack. He also had the right to call for backup. The decision of the officer to take the defendant in the

patrol car from the scene instead of leaving him on a busy highway was not unreasonable. Also, there was nothing improper about impounding the car. The record is devoid of evidence establishing that the defendant was forced into the patrol car or that he was about to be placed under arrest. He had the right to refuse the request of the police officer and did exercise that right. The officer went no further in violation of defendant's constitutional privileges. The surrender of the marijuana and paraphernalia was voluntary and without coercion.

The decision of the municipal court in suppressing the evidence is reversed.