**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0184-24

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JULIO C. GONZALEZ,
a/k/a JULIO C. GONZALES,

    Defendant-Appellant.

_____

Submitted May 20, 2026 – Decided June 9, 2026

Before Judges Vanek and Jacobs.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment Nos. 23-06-1578 and 23-07-2041.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Colin Sheehan, Assistant Deputy Public Defender, on the briefs).

Grace C. MacAulay, Camden County Prosecutor, attorney for respondent (Maura Murphy Sullivan, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Julio C. Gonzalez appeals the trial court's denial of his motion to suppress and his convictions for possession of a handgun without a permit and resisting arrest. We affirm.

I.

On the evening of April 14, 2023, Camden County Police Officers Nicholas Barrett and Stephen Starkovski were dispatched to Sky Liquors in response to a report of an intoxicated male harassing customers. On arrival, the officers encountered defendant, whom they had earlier asked to leave the area. When he saw the officers, defendant approached them carrying an open can of beer and cursing. The officers told defendant that if he continued to possess an open container of alcohol, he would be ticketed. Defendant refused to dispose of the beer or leave the area. Officer Starkovski then confiscated the can of beer, after which defendant reentered the store. The officers followed defendant into the store and instructed an employee to stop serving him. Defendant began "exchanging words" with another customer inside the store. Sensing a fight brewing, the officers removed defendant from the store.

As officers led him out, defendant resisted and a scuffle ensued. After several minutes and with the aid of a third officer, the police placed defendant in handcuffs. Once in the patrol car, Officer Barrett began collecting defendant's

2

A-0184-24

personal belongings. However, because defendant was intoxicated and combative, police were unable to thoroughly remove all defendant's belongings. They removed only defendant's bag, baseball hat, and wallet, examining the wallet solely to ascertain identification. The remaining items were placed in the patrol car for later inspection. Officers transported defendant to the hospital after determining he needed medical attention following the scuffle.

At the hospital, medical personnel admitted defendant for treatment. Officer Barrett drove the patrol car to a nearby parking lot so as not to block the emergency-room entrance. There, he placed defendant's property onto the hood of the patrol car and conducted an inventory search. He recovered an unloaded firearm and a loaded magazine from defendant's bag. Following medical treatment, officers transported defendant to the Camden County Jail.

A Camden County grand jury charged defendant with: second-degree unlawful possession of a weapon without a permit, N.J.S.A. 2C:39-5(b)(1); third-degree receiving stolen property, N.J.S.A. 2C:20-7(a); fourth-degree unlawful possession of hollow nose bullets, N.J.S.A. 2C:39-3(f)(1); fourth-degree unlawful possession of a large capacity magazine, N.J.S.A. 2C:39-3(j); and fourth-degree aggravated assault of a police officer, N.J.S.A. 2C:12-

1(b)(5)(A). Subsequently, the grand jury returned a second indictment, charging defendant with third-degree resisting arrest, N.J.S.A. 2C:29-2(a)(3)(a).

Defendant moved to suppress the evidence seized by police. The trial court held a hearing on the suppression motion. Officer Barrett was the only witness to testify at the hearing. Following closing arguments, the court denied defendant's motion in an oral decision and order entered the same day.

Based on its viewing of the body-worn camera footage, the court found Officer Barrett's testimony regarding the incident credible and corroborated by the video evidence. He further testified regarding the processing of individuals into the county jail, detailing an individual's property would be transported in a patrol vehicle, logged at the jail, handed to jail staff, and inventoried. The officer would also examine a defendant's property to ensure no firearm, weapon, or drugs were brought into the facility. Officer Barrett testified he had performed this procedure before and it was common practice among officers.

Based on that testimony, the trial court ruled the search lawful. As an initial matter, it found undisputed that the officers had "ample probable cause to arrest . . . defendant." The court found the search-incident-to-arrest exception inapplicable because at the time of the search, defendant was already under arrest and admitted to the hospital on a stretcher and, thus, could not use

4

anything within his immediate control to harm the officers or destroy any potential evidence.

Relying on State v. Vanderee, 476 N.J. Super. 214 (App. Div. 2023), the court found the inventory-search exception applied because officers had "to check such inventory as part of the processing" and "based on the credible evidence the State ha[d] demonstrated that this was a routine inventory search which [wa]s done in these types of cases." The court deemed a ruling on inevitable discovery unnecessary because the evidence was not "illegally seized." See State v. Sugar, 108 N.J. 151, 156 (1987).

On February 9, 2024, defendant pleaded guilty to possession of a handgun without a permit and resisting arrest. The court sentenced defendant to a five-year prison term, subject to a mandatory forty-two-month parole-ineligibility period pursuant to the Graves Act, N.J.S.A. 2C:43-6(c), for the weapons offense, and a concurrent three-year prison term for resisting arrest. The court dismissed the remaining charges, together with three related disorderly persons charges, and imposed mandatory fines and fees.

Defendant appeals, raising the following argument:

> THE EVIDENCE SEIZED IN THE WARRANTLESS SEARCH OF [DEFENDANT]'S BAG MUST BE SUPPRESSED BECAUSE THE STATE FAILED TO PROVE THAT THE SEARCH, DISTANT IN TIME

AND PLACE FROM THE ARREST AND UNSUPPORTED BY ANY LEGAL INVENTORY PROCEDURE, SATISFIED ANY EXCEPTION TO THE WARRANT REQUIREMENT.

## II.

"Generally, on appellate review, a trial court's factual findings in support of granting or denying a motion to suppress must be upheld when 'those findings are supported by sufficient credible evidence in the record.'" State v. S.S., 229 N.J. 360, 374 (2017) (quoting State v. Gamble, 218 N.J. 412, 424 (2014)). This is because the trial court had the "opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Elders, 192 N.J. 224, 244 (2007) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). "Thus, appellate courts should reverse only when the trial court's determination is so clearly mistaken that the interests of justice demand intervention and correction." Gamble, 218 N.J. at 425 (internal quotation marks omitted) (quoting Elders, 192 N.J. at 244).

"A trial court's interpretation of the law, however, and the consequences that flow from established facts are not entitled to any special deference." Ibid. (citing State v. Gandhi, 201 N.J. 161, 176 (2010)). "Therefore, a trial court's legal conclusions are reviewed de novo." Ibid. (citing Gandhi, 201 N.J. at 176).

Thus, we review de novo questions about possible violations of the Fourth

6

Amendment to United States Constitution and Article I, Paragraph 7 of our State Constitution.  See State v. Missak, 476 N.J. Super. 302, 314 (App. Div. 2023) (holding the validity of a search warrant is a "purely legal" question) (internal quotation marks and citation omitted).  However, even in the Fourth Amendment context, "[w]e accord substantial deference to a trial court's determination that there was probable cause to issue a warrant."  State v. Marshall, 199 N.J. 602, 612 (2009) (citing State v. Jones, 179 N.J. 377, 388-89 (2004)).

"The State bears the burden of demonstrating that a warrantless search is justified by 'one of the few specifically established and well-delineated exceptions to the warrant requirement.'"  State v. Bogan, 200 N.J. 61, 73 (2009) (quoting State v. Frankel, 179 N.J. 586, 598 (2004)) (internal quotation marks omitted).

"It is well settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment."  United States v. Robinson, 414 U.S. 218, 224 (1973).  "In general, if a search is incident to a lawful arrest, one based on probable cause, the defendant's seizure automatically justifies a warrantless search of the defendant and the area within his or her immediate control."  State v. Goodwin, 173 N.J. 583, 598 (2002) (citing Chimel v. California, 395 U.S. 752, 763 (1969)).  "[T]he search incident to arrest

A-0184-24

exception to the warrant requirement was limned for two specific purposes—the protection of the police and the preservation of evidence . . . ."  State v. Eckel, 185 N.J. 523, 524 (2006).  The exception allows "the arresting officer to search" both "the arrestee's person and the area within his immediate control" in order to prevent the arrestee from obtaining a weapon or destroying evidence.  Chimel, 395 U.S. at 763 (internal quotation marks omitted).

"A search incident to an arrest must be contemporaneous with that arrest."  State v. Lentz, 463 N.J. Super. 54, 70 (App. Div. 2020) (quoting State v. Bradley, 291 N.J. Super. 501, 510 (App. Div. 1996)).  "An arrest and search are deemed to be 'reasonably contemporaneous' if 'they occur as parts of a single transaction, as connected units of an integrated incident.'"  Ibid. (quoting State v. Doyle, 42 N.J. 334, 343 (1964)).

A search incident to arrest, may, however, "be valid under some circumstances even though it is not conducted contemporaneously with the arrest."  State v. Oyenusi, 387 N.J. Super. 146, 156 (App. Div. 2006).  Such searches "are constitutionally permissible so long as (1) the delay itself and (2) the scope of the search were 'objectively reasonable.'"  State v. Torres, 253 N.J. 485, 507-08 (2023) (quoting Lentz, 463 N.J. Super. at 76).

A-0184-24

Another recognized exception to the warrant requirement is the inventory search. Vanderee, 476 N.J. Super. at 234.

> Police can "search an arrestee without a warrant and inventory the property in the arrestee's possession before he or she is jailed." State v. Hummel, 232 N.J. 196, 208 (2018). Inventory searches "serve[] a three-fold purpose: protection of the inventoried property while in police custody, shielding the police and storage bailees from false property claims, and safeguarding the police from potential danger." Ibid. (alteration in original) (quoting State v. Mangold, 82 N.J. 575, 581-82 (1980)). An inventory search must be reasonable under the circumstances. Ibid.; see also Mangold, 82 N.J. at 583. Accordingly, "the propriety of an inventory search involves a two-step inquiry: (1) whether the impoundment of the property is justified; and (2) whether the inventory procedure was legal." Hummel, 232 N.J. at 208 (citing Mangold, 82 N.J. at 583). Factors relevant to determining the reasonableness of the search include "the scope of the search, the procedure used, and the availability of less intrusive alternatives." Mangold, 82 N.J. at 584. No one factor is dispositive, and each factor should be balanced against the others. Hummel, 232 N.J. at 208-09. Assessing "whether law enforcement conducted the search pursuant to routine police procedures is essential" and "[s]earches conducted at variance with or in the absence of standardized practices are unlikely to satisfy the inventory-search warrant exception." Id. at 210.
>
> [Id. at 234-35 (alterations in original).]

In Vanderee, the defendant had injected himself with fentanyl-laced heroin. Id. at 223. At approximately 9:00 a.m., he lost control of a vehicle he was driving and crashed into a gas station, killing three people and injuring others. Id. at 224. The defendant was taken to the hospital where law enforcement searched his clothing, which had been removed by medical personnel. Id. at 225. The search was conducted between 9:30 and 10:15 a.m. Ibid. We upheld the search given safety concerns that officers could find another uncapped syringe in the clothing. Id. at 235. "Although the stipulated facts did not directly address the procedures the police routinely used for inventory searches, there was no dispute that inventory searches were routinely conducted by the Wayne police." Ibid.

On review of the record, we conclude the court did not err in its decision to uphold the search on inventory-search grounds rather than as a search incident to arrest. First, the court aptly noted the search-incident-to-arrest exception did not apply. Officer Barrett conducted the search over an hour following defendant's arrest and transport to the hospital; it was not a contemporaneous or singular transaction. Lentz, 463 N.J. Super. at 70; Oyenusi, 387 N.J. Super. at 156. Defendant was receiving treatment while the search occurred, and his personal effects were far out of his reach. Thus, the twin considerations

10

underlying a search incident to arrest were not implicated, and the search could not be justified under that exception. Chimel, 395 U.S. at 763.

Second, the court correctly concluded the search of defendant's effects was a permissible inventory search. As in Vanderee, the officers had valid safety concerns that defendant's bag could have contained a weapon or contraband, items that should not be admitted into the county jail. See 476 N.J. Super. at 234. The impoundment of the property was justified, as it is undisputed the arrest of defendant was lawful, and the inventory procedure itself was legal. See ibid. Officer Barrett testified to the procedures routinely used for inventory searches and that those procedures were commonly used by Camden police. The trial court reasonably relied on that testimony to reach a sound legal conclusion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M. C. Harley

Clerk of the Appellate Division