226 N.J. Super. 617 (1988)
545 A.2d 235
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
CHARLES E. MAHONEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 17, 1988.
Decided August 4, 1988.
*618 Before Judges MICHELS, SHEBELL and GAYNOR.
John S. Redden, Deputy First Assistant Prosecutor, argued the cause for appellant (Herbert H. Tate, Jr., Essex County Prosecutor, attorney; Marc J. Friedman, Assistant Prosecutor, of counsel and on the brief).
Mario A. Iavicoli argued the cause for respondent.
The opinion of the court was delivered by GAYNOR, J.A.D.
Pursuant to leave granted, the State appeals from an order of the Law Division granting defendant's motion to suppress evidence seized pursuant to a warrantless search at Newark International Airport.
On February 24, 1986 at approximately 2:00 a.m., defendant, while preparing to board a plane bound for California, read a sign at the weapons screening point which stated "All weapons must be declared by order of the Port Authority." In response to his question as to what the sign meant, Port Authority Police Officer David Hanna told defendant that it required the declaring *619 of a weapon if he had one on his person or in his luggage. Defendant then stated that he had a gun in his suitcase. Upon being asked to exhibit his New Jersey carrying permit, defendant acknowledged that he did not have one. With defendant's cooperation, the officer opened defendant's suitcase and retrieved a handgun as well as the clip and bullets. Advising defendant that it was illegal to carry a gun in New Jersey without the proper documents, the officer placed defendant under arrest.
Defendant was taken with his luggage to the Port Authority Police Headquarters. In accordance with standard department procedure, an inventory search of defendant's suitcase and briefcase was conducted. The search disclosed a telephone scrambler, $10,000 in cash wrapped in yellow paper, numerous typewritten and handwritten papers and notes, cocaine and marijuana. The majority of items contained in both pieces of luggage were not listed by the officers on the inventory sheet.
When making his flight reservation, defendant had asked the airline clerk whether he could transport a gun in his luggage. He was informed that it was permitted provided the gun was not loaded. That such information was being given by the airline people was evident to the Port Authority because of the number of people who responded to the sign at the screening post and were then arrested for unlawful possession of a gun. In response to this situation, the Authority had instituted a speedy bail procedure for the travelers so arrested.
In suppressing the evidence seized as the result of the warrantless search at the screening point in the airport, the motion judge reasoned:
This Court is confronted here with a situation where the defendant, after being misinformed as to the proper procedure for transporting a weapon, was forced to incriminate himself, an incrimination which led to his arrest, a situation known to be a common one by the Port Authority Police, according to Port Authority Police Officer Desmond Foster. To rephrase Officer Foster's testimony, the airlines are always telling people the wrong thing, and because of this misinformation people were always getting arrested.

*620 In this case, this Court finds that the defendant, relying on such misinformation, transported a handgun from Florida to New Jersey. Although the State alleges in its letter brief that the defendant's gun did not have any papers, there's been absolutely no evidence demonstrating that the gun in question was not licensed in the State of Florida.
This Court also finds that the Port Authority Police had knowledge of the misinformation given out by the airlines regarding the transportation of weapons. In addition, they had knowledge that the sign posted was reasonably likely to elicit incriminatory responses from travelers who relied upon such misinformation.
In applying these holdings to the more particularized facts of this case, this Court finds that the incriminating response given by the defendant was a direct result of the Port Authority deceptive  directive, rather, and the statement of Officer Hanna, and thus constitutes a violation of this defendant's Fifth and Fourteenth Amendment rights, rights which prohibit the Government from extracting from this defendant incriminatory information to a misleading disclosure requirement enforced from what would appear to be criminal penalties. Here, the defendant, assuming he had acted in a lawful manner in the transportation of his weapon, attempted to further comply with the law. In that attempt when confronted with the sign contained in the directive from the Port Authority, rather than the threat of the first consequence imposed, it compelled the defendant to incriminate himself. Thus, the Port Authority Police, knowing that there would be travelers passing through Terminal C which were misinformed by the airlines as to the procedures for transportation  transporting weapons have posted a directive compelling such people to incriminate themselves unknowingly and unwittingly. The travelers declared their weapons to the Port Authority Police in their willingness to cooperate with the authorities only to be immediately searched and arrested.
The motion judge continued:
This scenario is made even more repugnant by the fact that the Port Authority Police, cognizant of how the scene will play itself out, rely on the threat contained in the directive as well as the deception created to compel travelers, such as this defendant, in making incriminating disclosures against themselves, disclosures which furnished the evidence needed to prosecute these individuals for a crime. This is a situation very distinguishable from the ordinary airport hijack-type search or a simple search based on probable cause.
I find the situation created by the misinformation and the sign to be distinguishable from the signs dealt with in numerous cases upholding airport  signs to apprise travelers that their belongings may be subject to search.
For these reasons, this Court holds that all the evidence obtained by the exploitation of the defendant's constitutional rights and challenged here by the defendant must be suppressed as the fruit of the poisonous tree.
Although concluding that the evidence seized as a result of the subsequent warrantless search of defendant's luggage at the police headquarters was excludable "as the fruits of the *621 poisonous tree," the judge also determined that the evidence was suppressible as having been disclosed by an invalid inventory search. In this respect, the judge observed:
This Court also makes no finding as to whether a valid inventory search procedure exists to the conduct of a valid inventory search, but does find that in the case of this defendant, Port Authority Police Officers Hanna and Foster were not concerned with conducting an inventory search; instead, they were searching the defendant's belongings for the sole purpose of investigation. Their aim was to see what they could turn up. They may choose to characterize this investigation as an inventory search and laid upon finding contraband, rely on that convenient designation, but this Court finds that based on the facts as they were established that designation is nothing more than a pretext.
Finally, it must be stated that if the suitcase and the briefcase were impounded incident to the defendant's arrest and inventoried as incident to post-arrest, the inventory search should be upheld only if the defendant's custody at that time is lawful. Thus, assuming arguendo that the second search in the instant case was a valid inventory search, it would still be unlawful because the detention of the defendant was unjustified. It is this Court's finding that the first search at Terminal C  the probable cause had been dissipated.
The following arguments are advanced by the State in seeking a reversal of the suppression order entered June 23, 1987:
I. THE LOWER COURT ERRED IN FINDING THAT THE SIGN POSTED AT THE AIRPORT SCREENING POINT VIOLATED THE DEFENDANT'S FIFTH AND FOURTEENTH AMENDMENT RIGHTS AND CONSEQUENTLY THAT THE DOCTRINE OF THE FRUIT OF THE POISONOUS TREE BARRED FROM ADMISSION INTO EVIDENCE THE GUN, CLIP, BULLETS, NARCOTICS, AND CURRENCY.
II. ASSUMING ARGUENDO, THAT THE LOWER COURT PROPERLY FOUND THAT THE DOCTRINE OF FRUIT OF THE POISONOUS TREE BARRED FROM EVIDENCE THE GUN, CLIP, BULLETS, NARCOTICS, AND CURRENCY, SAID EVIDENCE REMAINS ADMISSIBLE PURSUANT TO THE INEVITABLE DISCOVERY RULE (Not Raised Below).
III. THE SEARCH OF THE DEFENDANT'S SUITCASE AND BRIEFCASE WAS PROPER UNDER THE FOURTH AMENDMENT, EVEN IN THE ABSENCE OF PROBABLE CAUSE, TO MAINTAIN AIRPORT SECURITY.
IV. THE SEARCH OF THE DEFENDANT'S SUITCASE AND BRIEFCASE WAS PROPER UNDER THE EXCEPTION TO THE WARRANT REQUIREMENT FOR SEARCH INCIDENT TO ARREST.
V. THE SEARCH OF THE DEFENDANT'S SUITCASE AND BRIEFCASE WAS PROPER PURSUANT TO A VALID INVENTORY SEARCH.
We direct our consideration of the issues raised in this appeal to the pivotal one of whether the posting of the Port Authority sign directing the declaration of all weapons by *622 airline travelers, in view of the incomplete information given by the airline concerning the transportation of guns and the response of the officer to defendant's question as to the meaning of the sign, constituted a violation of defendant's Fifth and Fourteenth Amendment rights thereby requiring the evidentiary suppression of the gun and its accessories revealed by the search of defendant's suitcase. We find no such constitutional violations arising from these circumstances and hence are constrained to conclude that the motion judge erred in precluding the evidentiary use of the gun, the clip and bullets.
The Fifth Amendment prohibits the government from forcing persons to disclose information concerning themselves that might incriminate them in future criminal proceedings, In re Martin, 90 N.J. 295, 331 (1982), and is applicable against the states by operation of the due process clause of the Fourteenth Amendment. Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964).[1] This protection against self-incrimination is firmly established as part of New Jersey common law and has been incorporated into our Rules of Evidence. Evid.R. 23, 24 and 25; In re Ippolito, 75 N.J. 435, 440 (1978). However, application of the Fifth Amendment privilege in state proceedings must be consistent with federal constitutional requirements. In re Ippolito, 75 N.J. at 440. The state is not precluded from asking questions, but is prohibited from compelling or coercing people to answer self-incriminating questions. *623 "The privilege is personal in the sense that, when questioned by the state, one has the liberty either to waive the privilege by answering the incriminating question or to assert the privilege and refuse to incriminate oneself." [citation omitted] In re Martin, 90 N.J. at 331.
An inculpatory statement, voluntarily and unwittingly made in the detectional stage, does not offend Fifth Amendment guaranties. As aptly observed in State v. McKnight, 52 N.J. 35 (1968):
The Constitution is not at all offended when a guilty man stubs his toe. On the contrary, it is decent to hope that he will. Nor is it dirty business to use evidence a defendant himself may furnish in the detectional stage. Voluntary confessions accord with high moral values, and as to the culprit who reveals his guilt unwittingly with no intent to shed his inner burden, it is no more unfair to use the evidence he thereby reveals than it is to turn against him clues at the scene of the crime which a brighter, better informed, or more gifted criminal would not have left. Thus the Fifth Amendment does not say that a man shall not be permitted to incriminate himself, or that he shall not be persuaded to do so. It says no more than that a man shall not be "compelled" to give evidence against himself. [Id. at 52]
However, as coercion is not tested by the presence or absence of violence or threats, or direct or implied promises of reward or benefit, but may be found in the nature of the interrogation, State v. Pickles, 46 N.J. 542, 576 (1966), the totality of the surrounding circumstances must be examined to determine if the making of the inculpatory statement was voluntary or coerced, actually or subtly. Frazier v. Cupp, 394 U.S. 731, 739, 89 S.Ct. 1420, 1424, 22 L.Ed.2d 684, 693 (1969); Spano v. New York, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959). Moreover, the competency of a confession is also dependent upon "the deeper requirement of fundamental fairness in the due process clause of the Fourteenth Amendment." State v. Pickles, 46 N.J. at 576.
In applying these principles to the present case, we are constrained to disagree with the motion judge's conclusion that defendant was compelled by Port Authority action to incriminate himself in acknowledging his unlawful possession of the handgun. While the information furnished him by the airline *624 may not have been complete, it comported with 49 U.S.C.A. App. § 1472(l)(3) which requires persons who are transporting weapons to place them unloaded in luggage which is to be placed in the baggage compartment of the plane. The sign posted by the Port Authority requiring that weapons be declared is also in accord with this federal statute. When the meaning of the sign was explained to him by the officer, defendant, prior to incriminating himself, could have left and chosen not to board his departing flight to California. Furthermore, that defendant was unaware of the New Jersey requirement of a permit for the carrying of a handgun, does not excuse his violation. Violation of the law due to ignorance is no excuse. Morss v. Forbes, 24 N.J. 341, 359 (1957).
We discern no coercion, actual or subtle, arising from these circumstances which permits a finding that defendant's inculpatory statements were impermissibly extracted by the Port Authority directive and the response of the officer to defendant's inquiry. Nor, do we perceive any unfairness in the maintenance of the sign, coupled with the knowledge of the information disseminated by the airline, to be so offensive to due process as to vitiate the voluntariness of defendant's incriminating admission. On the contrary, interests of public safety were furthered by the Port Authority directive and conduct which detected the unlawful possession of a handgun by a traveler intending to board a transcontinental plane. There is no constitutional bar to the use of evidence furnished by a defendant in the course of such a detectional proceeding. See State v. McKnight, 52 N.J. at 52. Accordingly, the motion judge erred in finding that a Fifth Amendment violation occurred and excluding the evidence discovered at the time of defendant's arrest at the airport screening point.
While the motion judge considered that the evidence seized as a result of the search of defendant's baggage conducted at police headquarters was excludable as fruit of the initial invalid search, he also concluded that it was not admissible as the result of a justifiable inventory search. Our review of the *625 record satisfies us that sufficient credible evidence exists in the record to support the motion judge's findings as to this latter conclusion. State v. Johnson, 42 N.J. 146, 162 (1964). It is evident from the testimony of the officers and the methods followed in conducting the search of defendant's luggage that an investigatory, rather than an inventory, search was being undertaken. Contrary to the purposes of an inventory search,[2] as found by the hearing judge, "[t]he defendant's belongings were rummaged through by these police officers; only suspicious items were scrutinized. None of the other contents of the defendant's suitcase or briefcase were removed or inventoried." A lawful inventory search must in fact be one initiated pursuant to the designated purposes of such an intrusion, rather than a subterfuge for a warrantless investigatory search. State v. Mangold, 82 N.J. 575, 584-585 (1980). The attendant circumstances clearly demonstrate that this search of defendant's luggage was conducted for the sole purpose of investigation and hence constituted an impermissible intrusion into defendant's constitutionally protected privacy interest in the contents of his luggage.[3]See Colorado v. Bertine, 479 U.S. 367, 372-74, 107 S.Ct. 738, 742, 93 L.Ed.2d 739, 746 (1987). The evidence thereby discovered thus was properly excluded.
*626 The State's arguments that the evidence discovered during the claimed inventory search was admissible pursuant to the inevitable discovery rule or as having been disclosed in the course of a search incident to defendant's arrest were not raised below. Sound principles of appellate procedure preclude this court from considering these contentions as they are not jurisdictional nor do they concern matters of great public interest. State v. Souss, 65 N.J. 453, 460 (1974); Nieder v. Royal Indemnity Ins. Co., 62 N.J. 229, 234 (1973). The presentation of new issues on appeal "is repugnant to the spirit of our practice which contemplates that, except in extraordinary situations, as where public policy or jurisdiction are involved, a party shall make his points in the court of first instance before urging them as grounds on appeal." State v. Daquino, 56 N.J. Super. 230, 233 (App.Div. 1959), certif. den. 30 N.J. 603 (1959), cert. den. 361 U.S. 944, 80 S.Ct. 407, 4 L.Ed.2d 363 (1960).
Accordingly, the order entered June 23, 1987 is affirmed in part and reversed in part. The matter is remanded to the Superior Court, Law Division, Essex County, for further proceedings consistent with this opinion.
NOTES
[1] There is no merit to the argument that state action was not involved in the circumstances giving rise to defendant's arrest. That the message on the sign posted in the airport terminal was a Port Authority directive is evident from the content of the sign, its location and the permanent nature of the posting. The speedy bail procedure instituted by the Authority for travelers arrested because of unlawfully possessing a weapon also evinces the Authority's acknowledgment of the official character of the directive. Whether or not the airline's dissemination of incomplete information might be considered state action, under the circumstances of this case, is irrelevant as the motion judge considered this conduct only as creating a situation which was being used by the Authority policy to the disadvantage of travelers who relied upon the information.
[2] The purpose of an inventory search is three-fold; it is to protect the inventoried property while in police custody, to shield police and storage bailees from false property claims and to safeguard the police from potential danger. South Dakota v. Opperman, 428 U.S. 364, 369, 96 S.Ct. 3092, 3097, 49 L.Ed.2d 1000, 1005 (1976); State v. Mangold, 82 N.J. 575, 581-582 (1980).
[3] It is also noted that defendant did not consent to the inventory search nor was he given the opportunity of making other arrangements for the safekeeping of his suitcase and briefcase. While such circumstances would not invalidate the search under Fourth Amendment standards, see Colorado v. Bertine, 479 U.S. 367, 372-74, 107 S.Ct. 738, 742, 93 L.Ed.2d 739, 747 (1987), our Supreme Court in State v. Mangold has construed Art. I, par. 7 of the New Jersey Constitution more broadly so as to confer greater protection to the individual. Thus, in Mangold, the Court concluded that "[a]bsent consent or alternative security provisions, an inventory may not be undertaken." Mangold, 82 N.J. at 587.