[Cite as *State v. Fleming*, 2020-Ohio-5352.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28743 |
| | : | |
| v. | : | Trial Court Case No. 2019-CR-3455 |
| | : | |
| JESS FLEMING | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

# O P I N I O N

Rendered on the 20th day of November, 2020.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
 Attorney for Plaintiff-Appellee

ANGELINA N. JACKSON, Atty. Reg. No. 0077937, Public Defender's Office, 117 South Main Street, Suite 400, Dayton, Ohio 45422
 Attorney for Defendant-Appellant

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-Appellant, Jess Fleming, appeals from his conviction for possession of heroin, in violation of R.C. 2925.11(A), a felony of the third degree, and possession of a fentanyl-related compound, in violation of R.C. 2925.11(A), a felony of the fifth degree. Fleming's no contest plea to these charges occurred after the trial court overruled his motion to suppress.

{¶ 2} According to Fleming, the suppression motion should have been granted because police officers violated his Fourth Amendment right to be free of warrantless searches when they conducted an inventory search of his vehicle. Fleming contends first that, by failing to offer him a chance to remove his property before the search was conducted, the police officers violated a tow policy that allowed them only to inventory property "left in the vehicle." Alternatively, Fleming argues that the tow policy is unreasonable because it fails to give vehicle owners a chance to remove property before the police conduct an inventory search on disabled vehicles in a non-arrest situation.

{¶ 3} After considering the evidence in the record and the legal arguments, we find Fleming's argument to be without merit. Accordingly, the judgment of the trial court will be affirmed.


I.   Facts and Course of Proceedings

{¶ 4} At the suppression hearing, Dayton Police Officer Michael Floyd was the only witness. Floyd testified that on October 20, 2019, he was dispatched to a traffic crash at the intersection of South Smithville Road and East Third Street in Dayton, Ohio. Transcript of Suppression Hearing ("Tr."), p. 6. The collision involved multiple vehicles that were blocking the intersection. *Id.*

{¶ 5} After arriving at the scene, Floyd observed Fleming sitting on the southeast curb of the intersection, filling out a witness statement. *Id.* at p. 7. Fleming had been the driver of a Ford F-150 truck, which was one of the vehicles that had been involved in the collision. *Id.* Because the entire northbound lane of the road was obstructed and the intersection typically was busy, the police decided to tow all the vehicles that could not be moved on their own power. *Id.* at p. 8, 15, and 21. Since Fleming's truck was not functioning, it was one of the vehicles that had to be towed. *Id.* at p. 15.

{¶ 6} The Dayton Police Department has a tow policy that provides officers with guidelines concerning what they should do when towing vehicles. *Id.* at p. 9 and State's Ex. 1. Under the policy, officers conduct an inventory of property in vehicles that are to be towed. This is an administrative care-taking function to secure valuables. *Id.* at p. 14 and 16. After deciding that Fleming's truck needed to be towed because it was blocking traffic, Officer Floyd told Fleming that the truck was going to be towed. *Id.* at p. 9-10. Fleming did not say anything in response. *Id.* at p. 10. Floyd did not tell Fleming that an inventory search was going to be conducted, nor did he ask Fleming if he would like to remove anything from the truck before the search began. *Id.* at p. 17. Floyd was not certain why he did not ask Fleming; he indicated he was just worried about getting traffic out of the way. *Id.* at p. 18.

{¶ 7} As Officer Floyd walked over to the truck's door, he immediately saw an aluminum container with a clear plastic top sitting in the middle of the front bench seat. He could see through the top and could see pills inside. Tr. at p. 11-12. As soon as Floyd saw the container, he grabbed it, took a closer look, and confirmed that it was what he thought it was. He then opened the container, removed the pills, and found a baggie

of powder under the pills.  *Id.* at p. 12.   The pills also contained powder.  *Id.* at p. 13. These items were later determined to contain illegal drugs.

{¶ 8} As a result, Fleming was indicted in November 2019 for the following offenses: Count I, possession of heroin (50 unit doses but less than 100 unit doses), in violation of R.C. 2925.11(A), a felony of the third degree; Count II, possession of heroin (less than one gram), in violation of R.C. 2925.11(A), a felony of the fifth degree; Count III, possession of a fentanyl-related compound, in violation of R.C. 2925.11(A), a felony of the fifth degree; and Count IV, possession of a fentanyl-related compound (50 unit doses but less than 100 unit doses), in violation of R.C. 2925.11(A), a felony of the third degree.   At his arraignment on November 20, 2019, Fleming stood mute, and the trial court entered a not guilty plea on his behalf.

{¶ 9} The following day, Fleming filed a motion to suppress any statements he made to police and to suppress any physical evidence seized during the vehicle's search. The trial court then held a hearing on the motion on January 13, 2020, and overruled the motion to suppress from the bench.   On the same day, the court filed an entry and order journalizing its decision overruling the motion to suppress.

{¶ 10} Thereafter, Fleming pled no contest to Count I, possession of heroin (50 unit doses but less than 100 unit doses), and Count III, possession of a fentanyl-related compound, in exchange for dismissal of the two remaining counts.   The trial court accepted his pleas, and on February 19, 2020, it sentenced Fleming to nine months in prison on one count and 18 months on the other, with the sentences to be served concurrently with each other and with a sentence Fleming received in another case. Fleming timely appealed from the judgment of the trial court.

II.   Did the Trial Court Err in Overruling the Motion to Suppress?

{¶ 11} Fleming's sole assignment of error states that:

The Trial Court Erred in Overruling Appellant's Motion to Suppress Where Police Conducted a Warrantless Search of His Automobile, Thereby Violating His Fourth Amendment Right to Be Free of Unreasonable Searches And Seizures.

{¶ 12} Fleming advances two main reasons for his contention that the trial court erred when it overruled his motion to suppress.   First, Officer Floyd did not ask Fleming if he wanted to remove anything from the disabled truck before the contents were inventoried pursuant to the Dayton Police Department tow policy.   Fleming also argues that the tow policy is unreasonable and violates the Fourth Amendment of the United States Constitution because it does not require officers to offer owners of disabled vehicles a chance to remove personal property before conducting inventory searches in non-arrest situations.

{¶ 13} "Appellate review of a motion to suppress presents a mixed question of law and fact.   When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses."   *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.   "Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. * * * Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard."   *Id.*

{¶ 14} Both the Fourteenth Amendment to the United States Constitution and Article I, Section 14, Ohio Constitution protect persons from unreasonable searches and seizures. *State v. Leak*, 145 Ohio St.3d 165, 2016-Ohio-154, 47 N.E.3d 821, ¶ 13. "Under the Fourth Amendment to the United States Constitution, a search conducted without prior approval of a judge or magistrate is per se unreasonable, subject to certain well-established exceptions." *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 181, citing *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 567 (1967). (Other citation omitted.)

{¶ 15} One such exception involves inventory searches "conducted in the service of law enforcement's community-caretaking function, which results from the government's extensive regulation of motor vehicles and traffic." *Leak* at ¶ 20, citing *Cady v. Dombrowski*, 413 U.S. 433, 441-442, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973). "In the interest of public safety, as part of the community-caretaking function of police, vehicles are frequently taken into police custody." *Id.*, citing *South Dakota v. Opperman*, 428 U.S. 364, 368, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). (Other citation omitted.) "Examples of vehicles taken into custody as part of law enforcement's community-caretaking role include those that have been in accidents, those that violate parking ordinances, those that are stolen or abandoned, and those that cannot be lawfully driven." *Id.*, citing *Opperman* at 368-369.

{¶ 16} These routine procedures of securing and inventorying a vehicle's contents serve "three distinct needs: the protection of the owner's property while it remains in police custody, * * * the protection of the police against claims or disputes over lost or stolen property, * * * and the protection of the police from potential danger." *Opperman* at 369.

"An inventory search is not subject to the Fourth Amendment's warrant requirement or a probable-cause review, because it is a search that is made for administrative reasons and is unrelated to a criminal investigation." *State v. Banks-Harvey*, 152 Ohio St.3d 368, 2018-Ohio-201, 96 N.E.3d 262, ¶ 20.

{¶ 17} In the case before us, Officer Floyd ordered Fleming's vehicle to be towed and taken into custody as authorized by General Order 3.02-6 of the Dayton Police Department. This is the document that outlines the Department's policy for towing vehicles. As indicated, Floyd issued the order because Fleming's vehicle was disabled due to the collision and was obstructing traffic. The relevant provisions of the tow policy state as follows:

I. **WHEN TO TOW A VEHICLE** * * *

* * *

C. Vehicle towed from accident scene at owner's request or when owner is incapable of making decision, or to remove the vehicle from obstructing traffic.

* * *

IV. **PROPERTY INVENTORY OF A TOWED MOTOR VEHICLE**

A. Prior to towing any motor vehicle (excluding Abandoned Vehicles), conduct an inventory of the vehicle's contents and note the information on the MDC screen or complete a Tow-In/Liability Waiver Card F-472. A property inventory is an administrative, caretaking function, which itemizes and secures property in a seized or impounded vehicle. The United States Supreme Court has ruled that an inventory of a lawfully

seized motor vehicle conducted to safeguard property and not merely as a pretext to search without a warrant is reasonable and does not violate Fourth Amendment Rights against illegal searches.

* * *

> D. <u>Inventory of a Towed Vehicle -- Non-Arrest Situation (i.e., Accidents, Car Trouble)</u>
>
> The owner, if able, may remove personal property from the vehicle prior to towing. Property left in the vehicle is inventoried and secured the same as in the parking violation tow section above.

State's Ex. 1, p. 1-3.

{¶ 18} The tow policy also permits police to "[i]nventory the contents of closed containers (boxes, bags, and unlocked suitcases)" in non-arrest situations as long as the container is not locked. *See* General Order 3.02-6, Section IV(D), Section IV(C), and Section IV(B)(5).

{¶ 19} As previously stated, Fleming argues that nothing can be "left in the vehicle" under the tow policy if the police fail to specifically tell owners of disabled vehicles in non-arrest situations that they can remove property items prior to an inventory search. Simply put, Fleming contends that owners of disabled vehicles cannot leave property behind without an express opportunity to remove it before an inventory search begins.

{¶ 20} In support of his argument, Fleming claims that the tow policy's use of the phrase "left in the vehicle" refers to property left in disabled vehicles that owners do not take after being told that they may take their property. In his brief, Fleming states that "leave" is defined as "to fail to take along," "to go away from," "desert," or "abandon."

Appellant's Brief, p. 6, quoting Webster's Dictionary. Based on these definitions, Fleming argues that the tow policy *requires* owners who remain at the scene to be expressly offered an opportunity to remove personal property before an inventory search can begin.

{¶ 21} However, nothing in the Dayton tow policy requires that police expressly advise owners of disabled vehicles that they "may remove personal property from the vehicle prior to towing." We have previously stressed that:

> The words in statutes or rules of procedure must be given their "plain and ordinary meaning, unless legislative intent indicates otherwise." *Union Rural Elec. Coop., Inc. v. Pub. Util. Comm.* (1990), 52 Ohio St.3d 78, 555 N.E.2d 641. If the rule conveys a meaning which is clear and unequivocal, then the interpretation is at an end. *Provident Bank v. Wood* (1973), 36 Ohio St.2d 101, 105-106, 304 N.E.2d 378. However, if the term is ambiguous, a court should look at all words used in the rule and ensure that all words have effect and no part of the rule is disregarded. *D.A.B.E., Inc. v. Toledo-Lucas Cty. Bd. of Health* (2002), 96 Ohio St.3d 250, 254, 773 N.E.2d 536, 2002-Ohio-4172.

*State ex rel. Montgomery Cty. Pub. Def. v. Rosencrans*, 2d Dist. Montgomery No. CA20416, 2005-Ohio-6681, ¶ 18.

{¶ 22} After applying these principles of interpretation, we disagree with Fleming's construction of the tow policy's language, as Fleming adds words and meaning to the policy that the policy's drafters did not intend. Specifically, Fleming argues that the phrase "left in the vehicle" somehow means that property cannot be left behind unless an

owner chooses not to take it after expressly being told he or she can take it. However, there are many ways of leaving something behind. Clearly, Fleming left his pill tin in the vehicle when he got out after the collision occurred.

**{¶ 23}** The tow policy does not explicitly state that the police have any duty to expressly tell owners that they "may remove personal property from the vehicle prior to towing." The plain and ordinary meaning, in fact, indicates otherwise. Consequently, Officer Floyd was not required to inform Fleming that he could remove property from the vehicle and did not violate the tow policy when he failed to provide such a warning.

**{¶ 24}** Fleming also argues that to satisfy the Fourth Amendment's reasonableness requirement, the tow policy must require police to expressly advise owners of disabled vehicles in a non-arrest situation that they may remove personal property before the vehicle's contents are inventoried. In support of his argument, Fleming relies on two out-of-state cases: *State v. Mangold*, 82 N.J. 575, 414 A.2d 1312 (1980), and *State v. Fulmer*, 366 Ore. 224, 460 P.3d 486 (2019).

**{¶ 25}** In *Mangold*, the New Jersey Supreme Court held that a police inventory of a vehicle's contents did not satisfy the Fourth Amendment where the officers failed to consult the occupants of the vehicle who were not under arrest or otherwise incapacitated. *Mangold* at 587. The *Mangold* court further held that "if a vehicle is lawfully impounded and its owner or permissive user is present, that person must be given the option of either consenting to the inventory or making his own arrangements for the safekeeping of the property contained in the vehicle. Absent consent or alternative security provisions, an inventory may be not undertaken. In such cases the vehicle owner or user will be presumed to have assumed the risk for any claims of property loss

or theft arising from the impoundment." *Id.*

{¶ 26} However, after *Mangold* was decided, the United States Supreme Court rejected the idea that the Fourth Amendment requires the police to give vehicle owners a chance to make alternative arrangements. *See Colorado v. Bertine*, 479 U.S. 367, 373-374, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987). In *Bertine*, the police discovered a backpack during an inventory search of the contents of a van. *Id.* at 369. The backpack was opened and was found to contain a number of closed metal canisters. *Id.* After opening the canisters, the police found illegal drugs, drug paraphernalia, and $700 in cash. *Id.* Another $210 in cash was found in a sealed envelope in an outside zippered compartment of the backpack. *Id.*

{¶ 27} At issue in *Bertine* was whether the search of the backpack should have been governed by the court's prior decisions on inventory searches or by its decisions concerning "closed trunks and suitcases," which had found that such searches violate the Fourth Amendment. *Id.* at 371. The court concluded that the inventory search principles applied. Thus, such a search "may be 'reasonable' under the Fourth Amendment even though it is not conducted pursuant to a warrant based upon probable cause." *Id.*

{¶ 28} The court then held that opening the backpack and the containers found during the inventory search did not violate the Fourth Amendment prohibition against unreasonable searches and seizures. Specifically, the court found "there was no showing that the police, who were following standardized procedures, acted in bad faith or for the sole purpose of investigation." *Id.* at 372. In concluding that the inventory search was conducted pursuant to standardized procedures, the court also emphasized

that the police department's policy for impounding vehicles mandated a detailed inventory of the opening of closed containers and their contents.  *Id.* at 374, fn. 6.

**{¶ 29}** Furthermore, the United States Supreme Court rejected the lower court's reasoning that the search was unreasonable because the police could have offered the defendant "the opportunity to make other arrangements for the safekeeping of his property."  *Bertine*, 479 U.S. at 373, 107 S.Ct. 738, 93 L.Ed.2d 739.  In this regard, the court stressed the distinction between what "could" be achieved and what is "required" under the Fourth Amendment.  *Id.* at 374.  The court also remarked that " '[t]he reasonableness of any particular governmental activity does not necessarily or invariably turn on the existence of alternative "less intrusive" means.' "  *Id.*, quoting *Illinois v. Lafayette*, 462 U.S. 640, 647, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983).  Consequently, the court concluded that "reasonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment, even though courts might as a matter of hindsight be able to devise equally reasonable rules requiring a different procedure."  *Id.*

**{¶ 30}** New Jersey decisions issued after *Bertine* have noted that "to the extent *Mangold* rested upon Fourth Amendment jurisprudence it may no longer be valid insofar as the 'alternative arrangements' aspect of its holding is concerned."  *State v. One 1994 Ford Thunderbird*, 349 N.J.Super. 352, 367, 793 A.2d 792 (2002), discussing *Mangold*, 82 N.J. 575, 414 A.2d 1312.  However, the court did observe in *Thunderbird* that *Mangold* remains good law on state law grounds because Art. 1, part 7 of New Jersey's Constitution offers greater protection than the Fourth Amendment of the United States Constitution.  *Id.* at 367, fn.12, citing *State v. Mahoney*, 226 N.J.Super. 617, 625, fn. 3,

545 A.2d 235 (1988). And, indeed, the New Jersey Supreme Court recently cited *Mangold* for its balancing test, which includes " 'the availability of less intrusive alternatives.' " *State v. Hummel*, 232 N.J. 196, 210, 179 A.3d 366 (2018), quoting *Mangold* at 584.

{¶ 31} Concerning the *Fulmer* decision, the Supreme Court of Oregon held that the police must "give occupants who are present and not under arrest notice that they may retrieve readily removable personal belongings before an inventory is conducted." *Fulmer*, 366 Ore. at 234, 460 P.3d 486. The court's holding was based on the fact that "exceptions to the warrant requirement of Article I, section 9 [of the Oregon Constitution], are limited by the purposes that justify the exception in the first place. And,* * * the admission of evidence discovered in a noncriminal, noninvestigative inventory search, when the owner of the property is present and able to retrieve the property – but is never notified that he or she may do so – exceeds the permissible scope of the exception." *Id.* at 235. Notably, the *Fulmer* court did not extend its ruling beyond the Oregon Constitution.

{¶ 32} In view of the above analysis, both decisions that Fleming cites are based solely on interpretations of state constitutions that exceed what the Fourth Amendment requires. In this vein, the Supreme Court of Ohio has stressed that "[w]e will generally 'harmonize our interpretation of Section 14, Article I of the Ohio Constitution with the Fourth Amendment, *unless there are persuasive reasons to find otherwise.*' " (Emphasis sic.) *State v. Bembry*, 151 Ohio St.3d 502, 2017-Ohio-8114, 90 N.E.3d 891, ¶ 24, quoting *State v. Robinette*, 80 Ohio St.3d 234, 239, 685 N.E.2d 762 (1997).

{¶ 33} At certain times, the Supreme Court of Ohio has extended greater

protection to its citizens than the Fourth Amendment requires. For example, in *State v. Brown*, 99 Ohio St.3d 323, 2003-Ohio-3931, 792 N.E.2d 175 (*Brown I*), the court held that "Section 14, Article I of the Ohio Constitution provides greater protection than the Fourth Amendment to the United States Constitution against warrantless arrests for minor misdemeanors * * *." *Id.* at ¶ 7. Similarly, the court has also held, pursuant to the Ohio Constitution, that "[t]he government's interests in permitting an officer without statutory jurisdiction or authority to make a traffic stop for a minor misdemeanor offense in these circumstances is minimal and is outweighed by the intrusion upon the individual's liberty and privacy that necessarily arises out of the stop." *State v. Brown*, 143 Ohio St.3d 444, 2015-Ohio-2438, 39 N.E.3d 496, ¶ 25 (*Brown II*).

{¶ 34} In making the decision whether "persuasive reasons" exist, the Supreme Court of Ohio has applied a balancing test which "weighs the government's interests against the offender's interests." *Brown I* at ¶ 17 and 22, citing *State v. Jones*, 88 Ohio St.3d 430, 440, 727 N.E.2d 886 (2000). *Accord Brown II* at ¶ 21.

{¶ 35} Fleming has not given us persuasive reasons to extend the reach of the Ohio Constitution to the present circumstances, other than indicating that the constitutions of Ohio and Oregon are nearly identical. Appellant's Reply Brief, p.1. While that may be true, it adds nothing to the equation.

{¶ 36} Upon consideration, we do not find persuasive reasons to extend the reach of Ohio's constitutional protections in the manner Fleming suggests. As an initial point, no Ohio cases taking such an approach have been cited to us, and we have not discovered any. More importantly, the Ohio Supreme Court has extended the constitutional protection of Section 14, Article I of the Ohio Constitution in very few

situations. We are not inclined to venture beyond what the Supreme Court of Ohio has already allowed, particularly in the situation before us.

{¶ 37} We also note that in *Bertine*, the United States Supreme Court stressed the "strong governmental interests" involved in the policies behind inventory searches and "the diminished expectation of privacy in an automobile * * *." *Bertine*, 479 U.S. at 372, 107 S.Ct. 738, 93 L.Ed.2d 739. Given this comment, the balancing analysis clearly does not weigh in favor of extending the reach of Ohio's constitution.

{¶ 38} The Dayton Police Department's tow policy is also consistent with Ohio law, which provides that "[i]f, during a valid inventory search of a lawfully impounded vehicle, a law-enforcement official discovers a closed container, the container may only be opened as part of the inventory process if there is in existence a standardized policy or practice specifically governing the opening of such containers." *State v. Hathman*, 65 Ohio St.3d 403, 604 N.E.2d 743 (1992), paragraph two of the syllabus, following *Bertine* and *Florida v. Wells*, 495 U.S. 1, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990). *Accord State v. Reese*, 2d Dist. Champaign No. 2018-CA-10, 2019-Ohio-399, ¶ 14. As noted above, Dayton's tow policy specifically covers and permits opening of closed containers, unless they are locked.

{¶ 39} Moreover, while *Bertine* recognizes that in hindsight, "equally reasonable rules requiring a different procedure" might be used, they are not required. *Bertine* at 374. Significantly, the trial court stated during the suppression hearing that "[t]t would not be unreasonable * * * to make a policy that * * * the owners, the drivers, should be advised of their right to remove * * * personal property prior to towing. It's not a far-fetched idea." Tr. at p. 33-34. However, the trial court ultimately held, and we agree,

that the Dayton Police tow policy is a reasonable, standardized policy that Officer Floyd complied with in good faith. Therefore, the tow policy was not constitutionally lacking. The policy did not unreasonably fail to require the police to expressly notify owners of disabled vehicles that they could remove personal property before an inventory search was conducted.

{¶ 40} As a final matter, the State contends that the motion to suppress was properly denied because the object in question was in plain view when Officer Floyd walked up to the car. Appellee's Brief, p. 6-7. The trial court did not make a ruling on this point, and given our ruling on the suppression decision, we have no need to consider it.

{¶ 41} Based on the preceding discussion, Fleming's sole assignment of error is overruled.

### III. Conclusion

{¶ 42} Fleming's assignment of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . .

HALL, J., concurs.

DONOVAN, J., dissents:

{¶ 43} I dissent. In my view, the majority's interpretation of the Dayton tow policy in non-arrest situations violates both the United States and Ohio Constitutions. The Fourth Amendment was specifically designed as a bulwark to restrain law enforcement in the

context of searches. The majority's decision herein, however, empowers local law enforcement to determine the substance of the Fourth Amendment in the area of non-arrest warrantless inventory searches. Under the majority view, local law enforcement is authorized to restrict itself only when it deems necessary or convenient to permit an able driver to retrieve items left in a vehicle. Such a process is not a robust protection against unreasonable invasions of privacy.

{¶ 44} Fleming was not under arrest, had not committed any traffic or parking violation and was "able" to retrieve his personal effects from his automobile. The tow policy, as interpreted by the majority, does not guard against arbitrariness in its implementation. By giving an officer unbridled discretion to inventory without notice or consent of the owner, this portion of the tow policy cannot withstand constitutionality scrutiny. It has consistently been held that the "discretion of the officer in the field be circumscribed at least to some extent." *Delaware v. Prouse,* 440 U.S. 648, 661, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). *See also Almeida-Sanchez v. United States,* 413 U.S. 266, 270, 93, S.Ct. 2535, 37 L.Ed.2d 596 (1973); *Cady v. Dombrowski,* 413 U.S. 433, 443, 93 S.Ct. 2523, 37 L.Ed.2d 709 (1973); *Harris v. United States,* 390 U.S. 234, 235, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); *Camara v. Municipal Court,* 387 U.S. 523, 532-533, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967)*.* The majority's interpretation of the non-arrest tow policy leaves it to the whim of the individual officer to inform and allow a citizen to remove his or her personal effect from a vehicle. This is unreasonable and runs afoul of a systemic, standardized policy mandated by the Fourth Amendment to the United States and Ohio Constitutions.

{¶ 45} Notably, *Bertine* and *Opperman* involved arrest situations and thus

situations wherein the owner was not available to retrieve personal effects. Hence, they are distinguishable. Furthermore, the analysis in *Mangold* and *Fulmer* supports a reversal of the trial court's denial of Fleming's motion to suppress.

{¶ 46} We have a duty to insure that inventory searches do not become a license for police to conduct warrantless investigatory searches, encompassing even items which are unlikely to contain valuables and/or weapons.[1] By arbitrarily informing some owners of the inventory and their right to retrieve personal effects, and not informing others, the policy is not consistently and systematically implemented.

{¶ 47} I would find the inventory in this case to be fatally flawed by the failure of the police to discuss the disposition of the vehicle's contents with Fleming. I would reverse.

Copies sent to:

Mathias H. Heck, Jr.
Andrew T. French
Angelina N. Jackson
Hon. Timothy N. O'Connell

---

[1]The mint container did not give any indication that its contents were dangerous or particularly valuable and in need of a special inventory.