[Cite as *State v. Morris*, 2022-Ohio-94.]

## IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## CLARK COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2021-CA-31 |
| | : | |
| v. | : | Trial Court Case No. 2020-CR-573 |
| | : | |
| GAYLA MORRIS | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

## O P I N I O N

Rendered on the 14th day of January, 2022.

. . . . . . . . . . .

IAN A. RICHARDSON, Atty. Reg. No. 0100124, Assistant Prosecuting Attorney, Clark County Prosecutor's Office, Appellate Division, 50 East Columbia Street, Suite 449, Springfield, Ohio 45502
        Attorney for Plaintiff-Appellee

KAREN S. MILLER, Atty. Reg. No. 0071853, P.O. Box 341274, Beavercreek, Ohio 45434
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Gayla Morris appeals from her conviction, following a plea of no contest, to one count of aggravated possession of drugs, in violation of R.C. 2925.11(A), a felony of the fifth degree. She was sentenced to three years of community control. We will affirm the judgment of the trial court.

{¶ 2} Morris was indicted on October 6, 2020, and she pled not guilty on December 29, 2020. On February 26, 2021, Morris filed a motion to suppress, and the State filed a response. The trial court held a hearing on the motion on March 16, 2021.

{¶ 3} At the hearing, Trooper Anthony Guajardo testified that on October 17, 2019, at 2:50 a.m., he was on duty and pulled over a vehicle driven by Jon Bussard in which Morris was a passenger. Guajardo testified that he stopped Bussard "[b]ased off his driving behavior. When he saw me, he immediately pulled over and parked. And I ran the license plate and it came back expired." When asked what he observed when he made contact with Bussard, Guajardo responded that he observed signs of impairment, including "[an] odor of alcohol" and "bloodshot, glassy eyes." Guajardo also stated that, in his experience, when there is a "smell like airbag deployment, that normally goes along with meth, and I could smell that was coming from his breath." Guajardo testified that Bussard claimed to have been headed to a friend's house and to have stopped in front of the house, but Bussard could not identify "which one it was, what the number was," and Bussard was trying to get wi-fi on his phone to contact his friend.

{¶ 4} State's Exhibit 1, a copy of the dash-camera recording from Guajardo's cruiser, was played for the court. Guajardo testified that he initially investigated whether Bussard (Morris's boyfriend) was impaired, and while he did so, Morris remained in the

vehicle. Guajardo also testified that he had asked Morris "not move around and try to hide stuff," but that she had nonetheless "tr[ied] to grab things to put into her purse" and had been very hesitant to get out of the vehicle.

{¶ 5} Guajardo stated that when he finished with Bussard and made contact with Morris, he told her multiple times that she did not have to answer any questions, and she was not restrained. Guajardo asked Morris if she had anybody who could pick her up from the site of the traffic stop; he did not remember her answer. Guajardo also offered to give Morris a ride to the police station at a point when she was not under arrest, and he allowed her to gather her belongings before she exited the vehicle. Once she got out of the vehicle, Guajardo frisked her for weapons before she got in the patrol car, as depicted in the video, as he did before he let anyone in the patrol car. At this point, he looked in her purse and saw "the little bagg[ie] that she was trying to conceal." Guajardo read Morris her *Miranda* rights shortly afterward.

{¶ 6} On cross-examination, Guajardo reiterated that, when he took Bussard to the patrol car, he told Morris not to move around or try to hide anything; he acknowledged that she was not free to leave at that point. He also discussed the presence of an unopened beer can in the car within reach of the driver, which violated the open container law, but stated that he did not have probable cause to search the car at the point he saw the beer can. Guajardo did not conduct any field sobriety tests on Bussard until more than half an hour into the stop.

{¶ 7} Regarding Guajardo's contact with Morris, he testified on cross-examination that he had offered Morris a ride to the highway patrol post, but that at no point after he "saw the way her eyes looked" was she free to leave on her own, because Guajardo

thought she was under the influence and that her safety was his responsibility. Guajardo testified that Morris had answered his questions, but he denied that she had been "perfectly lucid." Although she had the options to wait for someone to come and get her or to get in a patrol car to go to the post, Guajardo acknowledged simply telling her that he had to take her somewhere. Guajardo testified that he had searched Morris's purse for weapons and had not asked her permission to search the purse; she was not under arrest at that time. As Guajardo described it, "the actual empty packet or empty bag" that gave him probable cause to search the vehicle "was not open in the purse," but was in Morris's hand because she had "pulled it out of her purse and held it in her hand" and she "was trying to hide it." Guajardo denied that he had planned to search the vehicle before Morris was removed from it, saying he "didn't have a legal way to get in that vehicle" and "wasn't going to search the vehicle."

{¶ 8} On redirect examination, when asked if, in his experience, weapons can be concealed in small bags or containers, Guajardo responded affirmatively, stating that "[t]here's a knife that's the same size as a credit card, lighters that can change into knives, phones that turn into guns."

{¶ 9} The trial court overruled Morris's motion to suppress. In its decision, the trial court described its reasoning as follows: :

> Before analyzing the specifics of the search, it is important to address the context in which the search occurred. The defendant was a passenger in a vehicle that was stopped by Trooper Guajardo. It was the driver, not her, that was the subject of his investigation. The driver was patted down, placed in handcuffs, advised of his rights, placed in the backseat of his

cruiser, subjected to an HGN test, and arrested for OVI. The defendant, on the other hand, remained in the front passenger seat of a parked vehicle. Prior to the search, she was not patted down, placed in handcuffs, advised of her rights, placed in the backseat of the cruiser, subjected to an HGN test, or arrested. Trooper Guajardo testified that she was not free to leave, but that was because he was concerned about her safety. He told her, "You're not in trouble at all," and "You don't have to answer any of my questions." He told her he would have to take her somewhere, again for her safety, because he was not comfortable with her wandering the streets if in fact she was impaired. He ultimately decided that he would transport her to the post for safety.

As far as the defendant was concerned, Trooper Guajardo created a very non-coercive atmosphere. This is the context in which he sought consent to search her purse. He asked, "Can you open [your purse] up?" It appears from State's Exhibit #1 that she begins pulling items out from her purse while he shines his flashlight on it.

The Court finds that the State has proven by clear and convincing evidence that the defendant consented to Trooper Guajardo searching her purse. It is true that under [*State v. Gonzalez,* 842 F.2d 748 (5th Cir.1988)], "acquiescence cannot substitute for free consent," but the defendant did much more than merely acquiesce. While she did not respond to his question verbally, she started pulling items out of her purse, conduct that amounts to implied consent. * * * When he asked, "What about

that little purse you pulled out," she opened it up. She knew she did not have to answer his questions, Trooper Guajardo having expressly told her so, therefore it would be reasonable to conclude that she knew she did not have to grant consent to search, meaning her consent was "freely and intelligently given 'uncontaminated by any duress or coercion, actual or implied.' " * * *

{¶ 10} The court concluded that Guajardo was legally permitted under the Fourth Amendment to conduct a warrantless search of Morris's purse because "she 'freely and intelligently' consented to it."

{¶ 11} After the trial court overruled her motion to suppress, Morris pled no contest and was convicted as described above.

{¶ 12} Morris appeals, asserting the following assignment of error:

DID THE WARRANTLESS SEIZURE OF DEFENDANT AND THE SUBSEQUENT WARRANTLESS SEARCH OF HER PURSE AFTER A PROLONGED STOP OF THE CAR SHE WAS RIDING IN AS A PASSENGER VIOLATE HER CONSTITUTIONAL RIGHTS, AND IF SO, SHOULD THE EVIDENCE HAVE BEEN SUPPRESSED?

{¶ 13} Morris argues that she did not voluntarily consent to the search of her purse after Trooper Guajardo told her that she was not free to leave and that he would be taking her to the patrol post. She argues that the trooper's need to search her purse for weapons was just an excuse or "a fishing expedition" for possible drugs, in violation of her constitutional rights under the Fourth and Fourteenth Amendments. According to Morris, "there was no need to search a closed purse that would be riding up front" in the

patrol car, since she would not have access to the purse and, even if there had been a weapon in it, she could not have reached it.

{¶ 14} Morris acknowledges that there was a reasonable articulable suspicion that the driver had committed a traffic offense, but she contends that the traffic stop and her subsequent detention were "prolonged and became a warrantless seizure in violation of her constitutional rights." Morris argues that while "she complied with the trooper's directives and seemed cooperative, she was unaware of her right to refuse consent to the search of her purse." She contends that the trooper testified that he informed her that she did not have to speak with him, but he did not inform her that she did not have to consent to the search of her purse; instead, she was told that her purse would be searched.

{¶ 15} Morris asserts that, because she was not under arrest and Guajardo testified that he did not have probable cause to believe that she had been involved in any criminal activity, if she did not voluntarily allow him to search her purse, he had no articulable reason to do so without a warrant. She asserts that, at the point Guajardo looked in her purse after she voluntarily opened it "and saw a little baggie that she was trying to conceal," he may very well have suspected criminal activity, but he should have then obtained a search warrant prior to completing the search of her purse and the vehicle.

{¶ 16} The State argues that the warrantless search of Morris's purse was lawful, because she engaged in a consensual encounter with Trooper Guajardo by allowing him to search her purse, and she "could have refused a ride from Trooper Guajardo and refused the search." The State argues that Guajardo "did not necessarily prolong the

traffic stop," and that it was "commensurate to the time it took Trooper Guajardo to look up Bussard's information and conduct HGN and field sobriety tests" on him. According to the State, the traffic stop was not needlessly prolonged for "a fishing expedition." The State asserts that, regardless of the length of the stop, Guajardo was going to offer Morris a ride, and the purse was going to be searched when Morris agreeing to ride with Guajardo.

{¶ 17} The State also notes that Guajardo did not make a show of force or indicate that Morris was obligated to accompany him and/or have her purse searched. According to the State, "[e]ven when police officers have no basis for suspecting an individual of any criminal activity, they may ask questions or even request to search the individual's property so long as the requests are not coercive." The State asserts that, once Bussard was arrested, Morris did not have a ride and could not drive herself, as she was under the influence, she did not own Bussard's vehicle, and the vehicle had expired tags. Trooper Guajardo offered her a ride, and Morris accepted and freely consented to having her purse searched.

{¶ 18} The State argues that, while Guajardo felt he could not simply let Morris leave the scene on her own out of concern for her safety, he did not give her an explicit instruction as to what she had to do. Moreover, the State asserts that Guajardo's "personal state of mind" was irrelevant; rather, the analysis turns on whether a reasonable person in Morris's position would have understood she could leave.

{¶ 19} Regarding Morris's argument that the search of the purse was unjustified because she would not have had access to it in the front seat of the cruiser, the State responds that the degree of risk to Guajardo was irrelevant to the analysis "because

[Morris] gave consent to search." The State asserts that Guajardo was free to ask to search Morris's belongings in conjunction with his offer of a ride, even without any suspicion of criminal activity. Moreover, according to the State, Guajardo had a legitimate concern for his safety leading up to the search of the purse, because Morris had been permitted to gather belongings from the vehicle and was holding the purse when she approached Guajardo to accept the ride. Finally, the State asserts that the "safety risk, and potential for [Morris] to pull a weapon from the purse was manifested at the time of the search, regardless of the seating arrangement in the patrol vehicle."

{¶ 20} As this Court has noted:

A trial court undertakes the position of the trier of fact in a motion to suppress evidence. *State v. Retherford* (1994), 93 Ohio App.3d 586, 592, 639 N.E.2d 498; *State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972. The trial court is in the best position to decide questions of fact and to determine the credibility of witnesses. *Retherford* * * * at 592, * * *; *State v. Clay* (1972), 34 Ohio St.2d 250, 251, 298 N.E.2d 137. "Accordingly, in our review, we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." *Retherford* * * * at 592 * * *.

The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution guarantee "the right of people to be secure in their persons, houses, papers, and effects, against

unreasonable searches and seizures." It is well established that the Fourth Amendment is not implicated in every instance where the police have contact with a private individual. *California v. Hodari D.* (1991), 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690; *Retherford* * * * at 593, * * *. The United States Supreme Court has identified three categories of police-citizen contact to identify situations where the Fourth Amendment protections are implicated. *State v. Hardin,* Montgomery App. No. 20305, 2005-Ohio-130, at ¶ 13; *Florida v. Royer* (1982), 460 U.S. 491, 501-507, 103 S.Ct. 1319, 75 L.Ed.2d 229.

A consensual encounter can be an instance in which the Fourth Amendment protections are not implicated. *State v. Taylor* (1995) 106 Ohio App.3d 741, 747-748, 667 N.E.2d 60. Encounters are consensual where the police merely approach a person in a public place, engage the person in conversation, request information, and the person is free to choose not to answer and walk away. *Hardin* * * * at ¶ 14; *United States v. Mendenhall* (1980), 446 U.S. 544, 553, 100 S.Ct. 1870, 64 L.Ed.2d 497. "The Fourth Amendment guarantees are not implicated in such an encounter unless the police officer has by either physical force or show of authority restrained the person's liberty so that a reasonable person would not feel free to decline the officer's requests or otherwise terminate the encounter." *Taylor* [at 747-748, citing *Mendenhall* at 554.] "Even when police officers have no basis for suspecting a particular individual of any criminal activity, they may ask questions and even request to search that

person's property, so long as the requests are not perceived as coercive."

*State v. Hill* (Nov. 7, 1997), Hamilton App. No. C-960963, citing *Florida v. Bostick* (1991), 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389.

The request to check a person's identification does not make the encounter nonconsensual; nor does the request to check one's belongings. *Hardin* * * * at ¶ 14.   Only once a person's liberty has been restrained has the encounter lost its consensual nature and falls into a separate category beyond the scope of a consensual encounter. *Hardin* * * * at ¶ 14, citing *Taylor* * * * at 747-748 * * *.

A search is valid and does not violate the Fourth Amendment when it is consensual, so long as the consent is freely and voluntarily given. *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854.   The burden of proof is on the state to show, under the totality of the circumstances, by clear and convincing evidence that the consent was voluntary.   *State v. Connors-Camp,* Montgomery App. No. 20850, 2006-Ohio-409, at ¶ 27.

*State v. Crum,* 2d Dist. Montgomery No.22812, 2009-Ohio-3012, ¶ 11-15.

{¶ 21} In *State v. Sears*, 2d Dist. Montgomery No. 20849, 2005-Ohio-3880, ¶ 37, we stated:

* * * Knowledge of the right to refuse consent is not a prerequisite to establishing voluntary consent, but is a relevant factor to be taken into account.   Consent to a search that is obtained by threats or force, or granted only in submission to a claim of lawful authority, is invalid.

[*Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).] Such "lawful authority" is an express or implied false claim by police that they can immediately proceed to make the search in any event. *Bumper v. North Carolina*, [391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968)].

{¶ 22} Six factors courts consider in determining the voluntariness of consent include: 1) whether the defendant's custodial status was voluntary; 2) whether coercive police procedures were used; 3) the extent and level of the defendant's cooperation; 4) the defendant's awareness of his or her right to refuse consent; 5) the defendant's education and intelligence; and 6) the defendant's belief that no incriminating evidence would be found. *State v. George*, 2d Dist. Montgomery No. 25945, 2014-Ohio-4853, ¶ 28.

{¶ 23} As this Court has previously noted:

Courts and commentators have recognized that "consent [to search] may be implied by the circumstances surrounding the search, by the person's prior actions or agreements, or by the person's failure to object to the search." Kuras, et al., Warrantless Searches and Seizures (2002), 90 Geo.L.J. 1130, 1172. "Thus a search may be lawful even if the person giving consent does not recite the talismanic phrase 'You have my permission to search.' * * *." *United States v. Better-Janusch* (C.A.2, 1981), 646 F.2d 759, 764.

*State v. Lane*, 2d Dist. Montgomery No. 21501, 2006-Ohio-6830, ¶ 40.

{¶ 24} We have carefully reviewed the video of Trooper Guajardo's encounter with

Morris. Initially, we cannot agree with Morris that the traffic stop was unlawfully prolonged. As this Court has noted:

> When a lawfully stopped vehicle contains passengers, the Fourth Amendment permits law enforcement officers to detain those passengers for the duration of the lawful detention of the driver. In addition, the Supreme Court has held that, due to concerns for officer safety and the minimal intrusion for the driver and passengers, the officers may order both the driver and the passengers to exit the vehicle. *Maryland v. Wilson* (1997), 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41.

*State v. Brown*, 2d Dist. Montgomery No. 20336, 2004-Ohio-4058, ¶ 14. The video reflects that Morris was not detained beyond the lawful detention of Bussard. The video was consistent with Guajardo's testimony that he entered Bussard's information, learned his license was suspended, administered field sobriety tests, patted him down, read him his rights, and placed him under arrest within a reasonable time. Guajardo was further entitled to assume custody of the vehicle as part of his community caretaking role, since neither occupant could legally operate the vehicle. *State v. Fleming*, 2020-Ohio-5352, 162 N.E.3d 981, ¶ 15 (2d Dist.)

{¶ 25} We further conclude that the State established by clear and convincing evidence that Morris voluntarily consented to the search of her purse after Bussard's arrest. Guajardo testified, and the video (Exhibit 1) reflects, that Morris was told that she did not have to answer any questions. Guajardo believed Morris to be impaired, and he did not want her to be injured out on the road alone. When asked if she had someone to call, Morris stated that her phone was off. Guajardo indicated that he would take her

to his post. He allowed Morris to gather her belongings, which she began putting in her purse. The video reflects that when Guajardo and Morris reached his cruiser, she placed her purse there and, when asked to open her purse, she did so without objection, removing items while Guajardo shined his flashlight inside the purse. The video reflects that Morris further opened the small purse contained within her larger purse in the same cooperative manner. While she did not expressly verbalize consent, we conclude that more than mere acquiescence was demonstrated. In other words, her consent was unequivocal.

{¶ 26} Guajardo expressed concern about weapons in the video and in his testimony, and he stated that weapons can be contained in small spaces, such as the smaller purse. The trial court clearly found Guajardo's testimony to be credible, and we defer to the trial court's assessment of credibility. We cannot conclude that Guajardo merely commenced a fishing expedition for evidence of criminality in Morris's purse or that Morris was subject to investigation for wrongdoing. Morris was not patted down, cuffed, administered field sobriety tests, or placed in the cruiser as Bussard had been. There was no duress, threat, or force. In the absence of coercive procedures, Morris was fully cooperative, and she was not restrained until the point of her arrest. We agree with the trial court's characterization of the non-coercive atmosphere of the encounter until the point of arrest. Until that time, Guajardo stated that he intended to take Morris to the post to insure her safety.

{¶ 27} Based upon the foregoing, the trial court properly overruled Morris's motion to suppress. Accordingly, her sole assignment of error is overruled, and the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and EPLEY, J., concur.


Copies sent to:

Ian A. Richardson
Karen S. Miller
Hon. Douglas M. Rastatter